SHAWMUT NATIONAL BANK *vs.* CITY OF BOSTON.

Suffolk.  March 11, 12. — June 25, 1875.  AMES & ENDICOTT, JJ., absent.

A lease of rooms in a building, in which other rooms are leased to different tenants, gives the lessee no interest in the land, and is terminated by the total destruction of the building by fire, and the lessee cannot maintain an action against the city, if a part of the land is afterwards taken to widen a street; although the lease provides that in case the premises shall be destroyed or damaged by fire so as to render the premises unfit for use, the rent or a proportionate part thereof shall be suspended or abated, until the building shall be so repaired by the lessor as to be in proper condition for use; and that, in case the premises are so far injured by fire as to become unfit for use and occupation, the lessee may repair them and restore them to their former condition, if he so elects, and in such case the lessee shall begin and complete such repair and rebuilding with diligence, and the rent shall not be suspended or abated; and that if the lessee elects to and does repair, the lessor shall make such repairs and restorations to the other parts of the building as to render the demised premises fit for occupation; and that if the lessee does not elect to repair and restore the premises, the lessor may elect whether to rebuild and repair the same or to terminate the lease.

PETITION to the Superior Court for a jury to assess damages for the taking of land by the respondent to widen Congress Street in Boston, the petitioner claiming to have a leasehold estate therein.    Other petitions were subsequently filed by George D. Howe and others, trustees under the will of George Howe, the owners of the land in fee, and by William F. Lawrence claiming to have a leasehold estate therein.

Trial before *Pitman*, J., who, by consent of the parties, before verdict, reported the case for the consideration of this court, in substance as follows :

On December 20, 1869, George Howe, being the owner of a parcel of land with a building thereon on Congress Street between Hawes Street and Water Street, leased to the Shawmut National Bank, for fifteen years from January 1, 1870, the lower floor and cellars of the building.    [The material provisions of the lease, a copy of which was annexed to the report, are stated in the opinion.]

On July 2, 1869, Howe leased to William F. Lawrence, for ten years from January 1, 1870, three rooms on the second floor of the building by an indenture containing the following among other provisions :  " Provided, however, that in case the premises, or any part thereof, shall, during said term, be destroyed or dam-

aged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then and in such case the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of the injury sustained, shall be suspended or abated until the said premises shall have been put by the said lessor, or those having his estate in the premises, in proper condition for use and habitation; and provided, also, that in case the demised premises are so far injured by fire, or other unavoidable casualty, as to become unfit for use and occupation, then the lessor may elect, whether to rebuild or repair the same, or to terminate this lease; and in case this lease is terminated, for this cause, or for breach of any of the agreements herein contained, between the days whereon the rent herein reserved becomes due, then the lessee agrees to pay proportionate rent for the period of his actual occupation."

On January 1, 1870, the bank leased to Lawrence a room in the first story of the building, being part of the premises demised to it by Howe, for ten years from said date, by an indenture containing the following among other provisions: "If, during the term, the buildings on the premises shall be destroyed or injured by fire, a deduction shall be made from the rent in proportion to the amount of damage; or if the buildings shall be entirely destroyed, then no rent shall be paid after the fire, till the buildings are repaired or rebuilt."

George Howe continued to be the owner of the land until his death in 1871, and since then it has been owned by the trustees under his will, and they and the above named lessees are the only parties interested in the land or building.

On November 9, 1872, the building was wholly destroyed by fire; the pier safes of the bank remained, but a few days after the fire the bank removed its books and papers, and did not afterwards enter upon or occupy the premises.

After the fire, the bank verbally requested the trustees to extend the time allowed the bank for election to repair and restore as provided in the lease, which they verbally agreed to do for a week; within the week the bank verbally notified the trustees that it did so elect to repair and restore the premises demised to it, and thereafter paid the rent reserved by said lease until the taking by the city, in the same manner as it had paid be-

fore the fire, which rent was received by the trustees and receipts therefor given as before the fire. Nothing more was ever done by the bank to repair or restore the premises, except to notify its readiness to the trustees as aforesaid, because of the passage of an order by the city council on November 15, 1872, requesting the inspector of buildings to refuse permits for the erecting of permanent buildings in the burnt district until action should be taken by the city authorities in respect to the laying out, altering and widening of streets in that territory; and of another order on December 17, 1872, authorizing the said inspector to issue permits for the erection of buildings on those parts of the burnt district not located on any street where any widening or extension was contemplated.

On May 5, 1873, the street commissioners took and laid out as a public street, for the purpose of widening Congress Street, a portion of the land of Howe's trustees, being a strip measuring $14\frac{20}{100}$ feet on Hawes Street and $12\frac{55}{100}$ on Water Street, and this taking was concurred in by the city council.

The lessees contended that the building could not, after the taking, be restored according to certain plans mentioned in the lease to the bank.

The case was reported for the determination of the rights of the respective parties in matters of law, and for such directions as this court should give.

*T. H. Sweetser & W. S. Gardner*, for the bank.

*M. Storey*, for Lawrence. ·

*G. S. Hale & F. V. Balch*, for the trustees.

*G. Putnam, Jr.*, for the respondent.

MORTON, J. To entitle the Shawmut National Bank to maintain its petition, it must show that it had an estate or interest in the land taken by the city. At the time of the taking, the land was unoccupied, the building previously standing thereon having been entirely destroyed by fire. In December, 1869, Howe, the owner of the land and building, leased a portion of the building to the bank for the term of fifteen years from January 1, 1870. The decisive question in this case is whether the bank, by this lease, took any estate in the land which continued after the building was destroyed. The indenture of lease demises to the bank " the lower floor and cellars of the building now standing at the

corner of Congress Street and Water Street in said Boston, said building being now numbered fifty-two on Congress Street, and sixty, sixty-two, sixty-four, sixty-six and sixty-eight on the northerly side of Water Street, and also two rooms or stores in the building numbered seventy, seventy-two, seventy-four and seventy-six on said Water Street, said rooms being on the lower floor, and also the cellar or basement (with the exceptions hereinafter noted) under the same. The lessor reserves the basement under the easterly or end store, and an entrance and doorway thereto at the easterly end of said building on Water Street, and another entrance and doorway at the easterly end thereof on Hawes Street." There are also other reservations which are not material in this case. The lease does not in terms demise the land, and does not purport to demise the whole of the building. The lessor reserves a portion of the basement, and several of the rooms in the upper part had been previously leased to the petitioner Lawrence. The case presents, therefore, the question as to the rights of the lessees where different rooms in the same building are leased to different tenants, and the whole building is destroyed by fire.

In *Stockwell* v. *Hunter*, 11 Met. 448, this question was carefully considered. In that case the tenant had a lease of the cellar and basement story of a building three stories high, each story being occupied by separate tenants, his lease containing no stipulations as to rebuilding in case of fire, and it was held that the destruction of the building terminated the interest of the lessee in the premises. This was upon the ground that such leases of distinct rooms do not carry any interest in the land beyond that connected with the enjoyment of the particular room; that the room was the thing leased, and that the destruction of the principal thing leased necessarily terminated the lessee's interest therein. This decision has been followed in *Graves* v. *Berdan*, 26 N. Y. 498; *Ainsworth* v. *Ritt*, 38 Cal. 89; and *McMillan* v. *Solomon*, 42 Ala. 356.

The petitioner contends that the case at bar is not governed by *Stockwell* v. *Hunter*, because its lease contains certain stipulations as to rebuilding in case of fire. The provisions relied upon are two, which are in substance as follows: The first is that in case the said building or the said premises shall be destroyed or dam-

aged by fire or other casualty, so as to render the premises unfit for use, the rent or a proportional part thereof shall be suspended or abated until the building shall be so repaired by the lessor that the said premises are in proper condition for use ; the second is that in case the said premises are so far injured by fire or other casualty, as to ·become unfit for use and occupation, the lessee may repair the demised premises and restore them to their condition before such casualty if it so elects within thirty days, and in such case the lessee shall begin and complete such repair and rebuilding with diligence, and the rent shall not be suspended or abated. If the lessee elects to and does repair said premises, the lessor covenants to make such repairs and restorations to the other parts of said building as shall be necessary to render the demised premises fit for occupation. If the lessee does not elect to repair and restore the demised premises, the lessor may elect whether to rebuild or repair the same or to terminate this lease.

Does the fact that the lease contains these provisions take the case out of the principle of *Stockwell* v. *Hunter, supra?* The real question is whether the intention of the parties, to be collected from the whole lease, was to grant to the lessees any estate in the land itself. As we have seen, the lease does not in terms grant any estate in the land. Throughout all its provisions the premises demised are carefully distinguished from the building and from the land. And we think there are insuperable difficulties in holding that any such grant is made by implication. These difficulties grow out of the nature and situation of the property, to which reference must be had in construing all leases. In cases where different rooms in the same building are leased to separate tenants, the situation of the property and the nature of the tenures exclude the idea that each tenant takes an estate for years in the land. Such estates existing at the same time in different tenants are inconsistent and impossible. And there is no reason for holding that the tenant first in order of time takes an estate for years to the exclusion of the others, for, from the nature of the case, each of the tenants and the lessor understand that other leases of a similar tenure are. to be given. This is well illustrated in the case at bar, in considering the effect of the first stipulation in the petitioner's lease above referred to. This is a very common provision both in leases of land and buildings,

and in leases of separate rooms in a building, and in this case it is found both in the lease of the bank and in the prior lease of Lawrence. When found in a lease of a mill, store or other building, it has force to show that the lessor intended a lease which should continue after the building was destroyed by fire, and therefore, when not controlled, would lead to the implication of a grant of an estate for years in the land covered by the building. But the same inference cannot reasonably be drawn where, as in this case, this provision is found in the several leases of particular rooms in the same building. The bank and Lawrence cannot both take an estate for years of the same land for the same time. Such estate in one necessarily excludes the other. We do not think it can be fairly inferred from this provision, that the lessor intended to grant an estate in the land to either. The peculiar character of the subject matter leased and its relation to the other property negative such an inference.

But the petitioner contends that the second provision in the lease above referred to authorizes the lessee to rebuild in case the building is destroyed by fire, and shows an intention on the part of the lessor to grant an estate in the land. The true construction of this provision is not free from doubt; but if we adopt that claimed by the petitioner, and hold that it applies to the case of a total destruction of the building, we do not think that the result which it claims follows. It is to be noted that the lessee is not to rebuild the whole building; it is " to repair the demised premises and to restore the same to their condition before such casualty," and the lessor covenants " to make such repairs and restorations to the other parts of said building as shall be necessary to render the demised premises fit for occupation." This imports that the lessor is to have control and dominion over the land, to enable him to lay the foundations and build those parts of the building not included in the demised premises, and is inconsistent with an intention to give the lessee the exclusive possession which the grant of an estate for years involves. Suppose the lessor, after the destruction of the building, refuses to rebuild, or to permit the lessees to rebuild, can the latter maintain a possessory action for the land? If so, what are the rights of other tenants who may hold under similar tenures? Or suppose the lessor shall build an entirely different building, as for instance

a church, could the lessee maintain an action to recover possession of the whole land and building, or of that space included within the walls of the rooms leased to him? These considerations show that there is an inherent difficulty, arising from the nature and relations of the property which is the subject of the lease, in deciding that in cases like that at bar the lessee takes by implication an estate for years in the land itself. Stipulations as to rebuilding, like those in this case, do not necessarily imply such an estate; but are rather in the nature of personal covenants, upon which, if there be a breach of them, the lessee may maintain a personal action.

We are therefore of opinion that the Shawmut Bank did not take by its lease an estate for years in the land covered by the building; that the principal thing leased to it was the several rooms described in the lease; that by the destruction of the principal thing, its interest in it necessarily terminated, and also the qualified interest which it had in the land as an incident of the principal matter.

It follows that at the time the respondent took the land the bank had no estate in it so as to entitle it to maintain its petition under the statute. The same considerations apply with equal force to the case of the petitioner Lawrence.

The result is that both the petitions must be dismissed.

*Petitions dismissed.*