ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

JOHN LOWELL & others *vs.* THOMAS STRAHAN.
AUGUSTUS LOWELL *vs.* SAME.

Suffolk.    March 3. — June 30, 1887.    GARDNER, J., absent.

A lease of " the first floor " in a building includes the outside of the front wall of
that part of the building, if there is nothing in the lease to control such
construction.

An agreement by the lessee of a building to allow a third person, in consideration
of an annual payment by him, to place a sign upon the outside wall of the
building, for a stated time, is not a breach of a covenant in the lease not to
underlet any part of the premises.

THE FIRST CASE was an action for money had and received,
brought by the owners of a building in Boston against a lessee
of a part of the building, to recover a sum of money which the
lessee had received from a person whom he had allowed to place
a sign on the outer wall of the part of the building leased to the
defendant; and the case proceeded on the ground that the outer
wall did not pass by the lease, but remained in the possession of
the owners.

THE SECOND CASE was an action by the lessor (one of the
plaintiffs in the first action) against the lessee, for breach of a
covenant against underletting, and proceeded upon the ground

that the outer wall was included in the lease, and that the act of the defendant in allowing the placing of the sign of the third person thereon was an underletting of the wall.

At the trial in the Superior Court, before *Bacon*, J., without a jury, it was agreed that the plaintiffs in the first case were the owners of the building, and that the second case should be treated as if the lease had been executed by all of the plaintiffs in the first case.

By the lease there was demised to the defendant, for the term of four years and eleven months from February 1, 1882, " the first floor and front part of basement in building situate on the northeasterly corner of Washington and Franklin streets in Boston." The lease contained a covenant on the part of the lessee to " keep all and singular the said premises in such repair as the same are in at the commencement of said term, or may be put in by the said lessor or his representatives during the continuance thereof; reasonable use and wear, and damage by accidental fire or other inevitable accidents, only excepted."

The lessee also covenanted to save the lessor harmless " from any claim or damage arising from neglect in not removing snow and ice from the roof of the building, or from the sidewalks bordering upon the premises so leased."

The lessee further covenanted that he would not " assign this lease, nor underlet the whole or any part of the said premises, nor make nor allow any unlawful, improper, or offensive use thereof, nor any alterations or additions during the term aforesaid, without the consent of the said lessor." And the lessor reserved the right " at seasonable times to enter into and upon the " premises " to examine the condition thereof."

It appeared in evidence, that, when the defendant took possession under the lease, there was a sign on the outside of one of the walls of the building, between the level of the floor and that of the ceiling of the first floor, which had been placed there by the firm of Jones, McDuffee, and Stratton, with the consent of the former tenant of the building; that the defendant made a contract with said firm, by which he agreed to allow their sign to remain upon said wall until February 1, 1886, in consideration of $150, payable in advance; that the defendant placed two signs, for his own use, upon the same part of the building, and

agreed with certain other persons that they might paint over one of these with an inscription of their own, in consideration of $12.50 a month, payable in advance, so long as they should leave the same upon the building; and that, in pursuance of the first of these agreements, the defendant received $600, and in pursuance of the second, $75.

Upon these facts, the plaintiffs requested the following rulings : " 1. The lease put in evidence in this case, covering only certain rooms in a building, gave the tenant no rights in the outside of the outer walls of the building, except a right to place upon them such a sign as was customary and reasonable for the advertisement of his own business. 2. The placing of other signs upon the outside of these walls was a trespass upon the property of the plaintiffs. 3. The defendant having leased the right to place signs upon these walls and received rent therefor, he is liable to the plaintiffs for the sums so received, and the plaintiffs may recover such sums in this action. 4. The agreements between the defendant and the persons who placed signs upon the walls were leases; and, if the lease to the defendant covered the outside walls, they were violations of his covenant not to underlet, for which he is liable to the landlord. 5. Under the circumstances of this case, the measure of damages is the amount of money the defendant received from the persons to whom he leased the right to place signs upon the walls."

The judge refused to give the rulings requested by the plaintiffs; ruled, as matter of law, that the outside of the walls in question was included in the lease, and that the agreements of the defendant with the persons whom he allowed to place or retain signs upon the building did not amount to an underletting; ordered judgment for the defendant in both actions; and, at the request of the plaintiffs, reported the case for the determination of this court.

*A. L. Lowell,* (*F. C. Lowell* with him,) for the plaintiffs. 1. Where the several rooms or stories of a building are let by separate leases, those parts of the building which are used in common by the tenants (such as the stairs, entries, and approaches) are not covered by the leases, but remain in the possession and control of the landlord. *Larue* v. *Farren Hotel Co.* 116 Mass. 67. *Readman* v. *Conway,* 126 Mass. 374. *Looney* v. *McLean,* 129 Mass.

33. The same principle applies to the outer walls of the building, with their fixtures; for it is clearly settled that the occupant of a building, and not its owner, is liable for injuries arising from a lack of due care to keep it in a safe and proper condition, and that a tenant who has hired a whole building is the occupant of its outside walls, to the exclusion of the landlord. *Leonard* v. *Storer*, 115 Mass. 86. Yet it is equally clear that the owner of a building, who has let it in separate parts to different tenants, still retains the control of the exterior portions of the building, and remains the occupant of it, and is liable to any one injured through his neglect to keep these portions in a safe condition. *Kirby* v. *Boylston Market Association*, 14 Gray, 249. *Milford* v. *Holbrook*, 9 Allen, 17. *Shipley* v. *Fifty Associates*, 101 Mass. 251, and 106 Mass. 194. *Leonard* v. *Storer*, *ubi supra*. *Watkins* v. *Goodall*, 138 Mass. 533. *Donohue* v. *Kendall*, 18 Jones & Sp. 386. *Henkel* v. *Murr*, 31 Hun, 28. *M'Martin* v. *Hannay*, 10 Ct. of Sess. Cas. (3d ser.) 411.

No sound distinction can be drawn between the roof and the outer walls of a building. Every part of each is adjacent to some one story or room, and the remaining tenements do not need the shelter of one more than the support of the other.

In *Riddle* v. *Littlefield*, 53 N. H. 503, it does not appear that the court had under consideration the fact that the lease covered but a part of the building. This was not clearly stated in the lease, nor was it argued to the court or alluded to in the opinion. It does not seem to have occurred to any one that the rights and duties of landlords and tenants in a building let as a whole, are in any respect changed when the building is let piecemeal.

2. There is another class of cases which sustains the distinction just taken; namely, that, while the lessee of a whole building hires it, both inside and outside, together with the land upon which it stands, the lessee of a particular room hires only the inside of that room.

When a building is destroyed by fire, it is held that the lease of the whole of the building is not terminated by such destruction, on the ground that the land, as well as the building, is covered by the lease, and, though the building is destroyed, the lease still attaches to the land. *Rogers* v. *Snow*, 118 Mass. 118. On

the other hand, it has been held that the destruction of a building terminates the lease of a room therein, because, as the subject of the lease has been destroyed, there is nothing to which the lease can attach. *Shawmut Bank* v. *Boston,* 118 Mass. 125.

If the outer walls are covered by a lease, and are not destroyed, it would seem that the lease should attach to them, and therefore it would not be terminated. These walls bear much the same relation to the room that the land does to the building. They are not, it is true, the principal thing leased, but neither is the land beneath a building in a city. It has been held, however, that the destruction of a building terminates a lease of the cellar and basement, although the brick walls are left standing around the demised premises. *Stockwell* v. *Hunter,* 11 Met. 448, 454. See also *Kerr* v. *Merchant's Exchange Co.* 3 Edw. Ch. 315; *Winton* v. *Cornish,* 5 Ohio, 477; *McMillan* v. *Solomon,* 42 Ala. 356; *Harrington* v. *Watson,* 11 Oregon, 143.

In several of the cases cited above, inasmuch as the leased premises included the ground floor of the building, the land also would have passed to the lessee under the decision in *Riddle* v. *Littlefield,* yet the lease was held to be terminated.

3. The only case in this Commonwealth in which the right of a tenant to place a sign upon the outside of a building was called in question, although not directly in point, sustains the contention of the plaintiffs in the case at bar. In *Pevey* v. *Skinner,* 116 Mass. 129, the lease to the plaintiff of rooms in the second story provided that " the lessee may have the right to place signs upon the outer wall of said rooms." The defendant had hired the lower floor of the same building, and it was held that, if the plaintiff could fully enjoy the privilege above granted without interference or obstruction from a sign which the defendant had placed upon this wall by a license from the landlord, then the grant of the privilege to the plaintiff could not be construed as a revocation of this license to the defendant. This decision could not have been made if the court had considered that outer walls are ordinarily covered by a lease of the rooms behind them. In such case the words of the lease would, at most, have limited the plaintiff's use of these walls to the placing of his own signs upon them, while the lease to him would have been in itself a revocation of the license to the defendant. Yet the court said in that

case, that the defendants had a right to maintain the sign, even if this right arose from " a revocable license only." If the defendants had received from the landlord a mere license to put their sign upon the inside of the room, instead of upon the outside wall, it is inconceivable that a lease of the room to the plaintiff would not have revoked that license, no matter what restrictions had been placed upon the plaintiff's use of the room.

4. A tenant has, no doubt, the right to place on the outside of the building, for the advertisement of his own business, such sign or signs as are customary and reasonable; but this customary privilege is not a lease of the walls, and it gives the tenant no right therein, except that of displaying reasonable signs for his own use. If, therefore, the outside walls of a building are not covered by ordinary separate leases of the rooms or stories behind them, and if the defendant in this case cannot prove that the outside walls passed to him under some special provision of this particular lease, it is clear that his acts were a trespass upon the plaintiff's property.

The defendant relies on the provision in the lease which obliges him to keep the sidewalk and roof clear of ice and snow. But the purpose of this provision is obvious, and it cannot be supposed that the parties intended to include the roof and outer walls in the leased premises; for, if the roof and walls were covered by the lease, the covenants therein would apply to them, and the tenant would be bound to keep them in repair, as the lease provides. He would, moreover, be liable to a stranger injured by a fall of the outside wall from want of repair. It is obvious, however, that the tenant did not intend to assume any such responsibility for these parts of the building, and intended to confine his duties to the removal of ice and snow.

5. If the outer wall is a part of the premises leased, the defendant has violated his covenant not to underlet.

The distinction between a license and a lease consists in the fact, that the former gives no estate in the premises, but only a right of action in case of breach of the contract, while the latter confers a positive right to occupy the premises, irrevocable by the lessor, and available against strangers. The former, moreover, is terminated by the death of either of the parties, while the latter, giving an estate in the land, survives. But the question

of lease or license is a question of intention, and there is no doubt that a definite part of the surface of a wall may be the subject of a lease if that is the intention of the parties. *Francis* v. *Hayward*, 22 Ch. D. 177. *Snyder* v. *Hersberg*, 11 Phila. 200.

In the case at bar, all the elements which constitute a lease were present. A fixed rent was reserved by the agreement. The premises covered by the contract were certain and definite, for it was agreed that the signs should remain upon the wall, and remain, of course, in their actual situation. It would clearly have been a breach of his agreement, if the defendant had moved the signs to less advantageous places upon the wall. These premises were to be in the exclusive occupation of the lessee, for it was not only clearly the intention of the parties, but, in the nature of things, inevitable, that the part of the surface of this wall covered by a sign should be used, enjoyed, and occupied only by the person whose advertisement was painted on that sign. Although the question whether a contract of this sort is a lease or a license has never arisen in the case of a sign, it has arisen under the laws for the assessment of poor-rates in England, in cases which bear a close resemblance to the case at bar. Thus, a contract by which the conservators of the Thames allowed a person to fix moorings in the river, to be removed on a week's notice, was held to be a lease, and not a license, and the lessee was held liable to be rated as an exclusive occupant of real estate. *Cory* v. *Bristow*, 2 App. Cas. 262. A decision to the same effect was given in a case where a telegraph company was permitted to erect posts and run wires along the track of a railroad, subject to removal upon notice. *Electric Telegraph Co.* v. *Overseers of Salford*, 11 Exch. 181. So, in a case still more nearly resembling the case at bar, where a telephone company ran wires overhead, and, by virtue of contracts with the owners of buildings, attached them to chimneys, roofs, walls, &c., by means of bolts, brackets, spikes, &c., the company paying rent and agreeing to remove upon a given notice. *Lancashire Telephone Co.* v. *Overseers of Manchester*, 14 Q. B. D. 267.

*A. Hemenway & D. F. Kimball*, for the defendant.

W. ALLEN, J. We think that the outside of the front wall was part of the premises demised in the lease of the first floor in

the building. If the language had been used in a conveyance in
fee simple, no question could have been made that the walls of
the building were included. Undoubtedly, the owner of a building
might, in conveying the lower and upper portions of it to differ-
ent grantees, except the outside of the walls, as he might do in
conveying the whole building to one grantee. In every case, it
is a question of intention, found in the language used, as applied
to the subject matter, and construed in connection with the
whole instrument. A lease for years by indenture differs from
a deed in fee simple, not only in the nature of the estate created,
but also in the fact that the instrument of demise is an agree-
ment between the parties containing mutual covenants affecting
their rights in the premises. The words of description used
should be construed in view of these considerations, which might
require a different meaning to be given to them from what would
be given to similar words in a conveyance in fee.

The words "first floor" in the building, are equivalent to "first
story" of the building, and naturally include the walls. The ap-
parent intention is to separate a section of the building as a dis-
tinct tenement. The words "first floor" define the lower and
upper boundaries of this, but there is nothing to fix the lateral
boundaries except the boundaries of the building. In this respect
the words differ somewhat from the word "room." "Floor"
means a section of the building between horizontal planes. The
words "in building" show that the section is of the whole build-
ing, and not of a part of it. The word "room" includes a de-
scription of the perpendicular as well as of the horizontal planes
which bound the parcel of the house described by it, and excludes
the outside of lateral walls, at least when they constitute the
walls of another room, as clearly as the words "first floor" ex-
clude the flooring of the story above it. Under what circum-
stances a lease of a story of a building would include a space
beyond the building over land belonging to it, need not be con-
sidered. In this case, the building adjoins the sidewalk, and
the words "first floor in building" must be held to include
the entire front wall of that part of the building, unless there is
something to control the natural meaning of the language.

That the outside of the front wall would be valuable to the
lessee as part of the premises, and that the lease gives him the

right to use it for some purposes, such as putting out signs and displaying goods, is not disputed; but it is contended that the right is a privilege or easement appurtenant to the leased premises in a part of the building, not parcel of them. The defendant contends, on the other hand, that the outside of the front wall is parcel of the leased premises. It often occurs in leases of part of a building that rights in other parts, or in land not parcel of the premises, as in entries, passageways, and yards, pass as appurtenant to them. The question in such cases generally is, not what is parcel of the demised premises, but what is incident to them. In general, a deed or lease of a house or store will include the land under it.

In *Stockwell* v. *Hunter*, 11 Met. 448, and in *Shawmut Bank* v. *Boston*, 118 Mass. 125, it was held that the land under a building would not pass as parcel of the premises in a lease of the basement of a building, the upper stories of which were let to other tenants. In the first case, Mr. Justice Dewey said: " The proper construction of such a lease as the present, as it seems to us, is, that the lessee's right of occupation of the land is an interest, for the time being, defeasible by the destruction of the building by fire." 11 Met. 456. In the latter case, Mr. Justice Morton said : " The real question is whether the intention of the parties, to be collected from the whole lease, was to grant to the lessees any estate in the land itself. As we have seen, the lease does not in terms grant any estate in the land. . . . . In cases where different rooms in the same building are leased to separate tenants, the situation of the property and the nature of the tenures exclude the idea that each tenant takes an estate for years in the land. Such estates existing at the same time in different tenants are inconsistent and impossible. . . . . The bank and Lawrence cannot both take an estate for years of the same land." 118 Mass. 129, 130.

In the case at bar, the words of description naturally include the premises in question, the outer walls. It is plain that the lease grants not merely an interest in the walls, like the incidental right of support or shelter which it grants in the land and other parts of the house, but the right to use and enjoy, as leased premises, for the purposes of business. That right is exclusive. The landlord has no right to use or to let it for such

purposes. From the mere demise, without regard to special provisions of the lease, there is no reason that the landlord should be regarded as having rights in the outside different from what he has in the inside of the wall. As owner of the upper tenement, he has a right in the whole wall for support, but that right would not operate to except the walls by implication from a deed in fee of the lower tenement, or from a grant of it for years. The occasions that the reversioner would have to enter upon the wall of the demised tenement must be few and extraordinary, and it could not be inferred, from the fact that the right was not expressly reserved in the lease, that the wall was excepted from it. We can see nothing in the nature of the estate granted, therefore, that should prevent the outer wall from being included as parcel of the demised premises. On the contrary, the fact that it is of value to the tenant for the use for which the premises may be occupied, and of no value for use to the landlord, would indicate that it was part of the premises, if the description was doubtful. If it did not pass by the lease in this case, it would seem that the right which the plaintiff claims could be maintained. The only right of the tenant would be to make such use of it as would be incident to his grant of the adjoining premises, and the right of the landlord would be to enter upon it, and make any use of it not inconsistent with the incidental rights of the tenant to use it. He might not have a right to take down the tenant's sign, but he would have the possession of the wall, and the right to enter upon it, and to use any of it not actually used by the tenant, for any purpose not inconsistent with the use by the tenant of the leased premises. It is not reasonable to suppose that this was the intention of either party. The actual possession and use of the wall by the tenant which the parties obviously intended are substantially that of leased premises, and it would be very difficult to define or fix the respective rights of the parties in it, except on the assumption that it is a part of the demised premises.

There is nothing in the particular provisions of the lease that bears with much force upon the question. The covenant of the lessee to repair is what would be expected, whether the outside of the wall were included or not, unless the suggestion is entitled to some weight, that, if the outer surface of the wall was not

included, the lessor would probably have insisted upon a special covenant by the lessee to keep it in repair. Perhaps the covenant by the lessee to save the lessor harmless from all damages arising from neglect in not removing snow and ice from the roof of the building, or " from the sidewalks bordering on the premises so leased," may afford a slight inference that the wall, including the outer surface of it, was part of the premises. The covenants by the lessee not to underlet, and not to make any unlawful, improper, or offensive use of the premises, nor any alterations or additions, and that the lessor may enter upon the premises to examine the condition thereof, while proper to protect the interest of the reversioner in the surface of the wall do not appear to have particular reference to that. We can find nothing in the lease which militates against the idea that the whole outer wall is included in the premises; and the description of the premises as applied to the subject matter, and the right in the outer surface of the wall, which it is reasonable to suppose the parties intended that the lessee should have, and the entire reasonableness that the whole of the front wall of that part of the building should be included in the lease of a floor or story of it, in connection with the particular provisions of the lease, lead us to the conclusion that the outer surface of the wall was part of the demised premises.

We find no authority against the conclusion we have reached. *Pevey* v. *Skinner*, 116 Mass. 129, decided that, where different rooms in a building were let to different tenants, a license by the owner of the building to the tenant of a lower room to place his sign on the outer wall of the building extending fifteen inches higher than the floor of the room above, was not revoked by a lease of the room above, which contained the provision that " the lessee may have the right to place signs upon the outer wall of said rooms." The general right in the outer wall of the lessee of a single room was not considered. The court said, " His right to use the outer surface of the wall was defined, and thereby limited, by the terms of the lease." The decision can have very little bearing upon the lease of a " floor," which does not define and limit the right to use the outer wall.

*Riddle* v. *Littlefield*, 53 N. H. 503, and *Baldwin* v. *Morgan*, 43 Hun, 355, are directly in favor of our conclusion.

*Loring* v. *Bacon*, 4 Mass. 575, and *Cheeseborough* v. *Green*, 10 Conn. 319, are cases where the respective rights of owners of lower and upper tenements in the same building are considered, but have no particular bearing upon the case at bar.

It is contended that the agreement of the defendant to allow the sign of a stranger, in consideration of an annual payment by him, to remain upon the outside wall demised, was a breach of the covenant in the lease not to underlet any part of the premises. But this was a license, and not a lease. It was permission to do a particular act, namely, to affix a sign to the wall, and gave no authority to do any other act upon the premises. The fact that the permission was paid for, and that the act permitted was a continuing one, are ordinary elements of a license. Every license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further. A lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms. It is clear in this case that the intention was that the licensee should have no other right in the premises than to affix his sign to them, and that every other right should remain in the defendant. An agreement of this nature cannot be construed as a lease; it must create either a license or an easement.

In *Pevey* v. *Skinner, ubi supra*, it was said that permitting a sign to be kept upon the wall for a long time would imply a license, but it was not intimated that it would imply a lease of the outer surface. We have not been referred to any case in which the question here presented, or any closely resembling it, has arisen. Numerous cases have arisen in England where the question was whether persons occupying land under particular agreements were liable to be rated as occupiers. See *Cory* v. *Bristow*, 2 App. Cas. 262; *Electric Telegraph Co.* v. *Overseers of Salford*, 11 Exch. 181; *Lancaster Telephone Co.* v. *Overseers of Manchester*, 14 Q. B. D. 267; *Watkins* v. *Overseers of Milton-next-Gravesend*, L. R. 3 Q. B. 350; *Forrest* v. *Overseers of Greenwich*, 8 E. & B. 890.

In *Selby* v. *Greaves*, L. R. 3 C. P. 594, the letting of a defined portion of a room in a factory with steam-power for working lace machines was held to be a demise; and in *Hancock* v. *Austin*, 14 C. B. (N. S.) 634, permission to place lace machines in a room

in a factory, and to work them with steam-power furnished by the owner of the factory, was held to be a license, and to create no demise. The case last cited approaches nearest to the case at bar of any that we have seen, and in that the reasons for regarding the transaction as a lease are obviously stronger than in this case. That was permission to occupy with fixed machines a portion of the floor and space above it; this is permission to insert fastenings in the outer wall from which to suspend a sign in proximity to, but outside of, the building.

*Judgments affirmed.*