(No. 11453.—Judgment affirmed.)

MARY SZULERECKI, Appellant, vs. JULIUS OPPENHEIMER, Appellee.

*Opinion filed April 17, 1918—Rehearing denied June 5, 1918.*

1. FORCIBLE DETAINER—*right of lessee to build on premises will not be considered in a forcible detainer suit.* In a forcible detainer suit to recover a lot after the building thereon, a portion of which was leased by the defendant, has been destroyed by fire, the only question before the court is the right to possession, and the question whether the defendant has a right, under his lease, to re-build at the plaintiff's expense will not be considered.

2. SAME—*plaintiff in forcible detainer suit must show right of possession.* The plaintiff in a forcible detainer suit must show a right of possession in himself and cannot rely upon the lack of right in those whom he seeks to dispossess, and the right to possession of a lot is not established merely by showing that the defendant was tenant of part of the building on the lot, which has been destroyed by fire.

3. LANDLORD AND TENANT—*mere lease of rooms in building conveys no interest in soil.* A mere lease of rooms in a building, without particular stipulations or covenants, conveys no interest in the soil upon which the building stands except so far as necessary to the enjoyment of the premises demised, and the destruction of the building terminates such a lease even when it is of the basement of the building.

4. SAME—*when destruction of building will not terminate lessee's right to possession of lot.* Where a lease of the first floor and basement of a building provides that if the building, or any part thereof, shall be rendered untenantable by fire, the lessor shall, and agrees to, restore the same within ninety days and the lessee shall not be obligated to pay rent while the premises are untenantable, but in the event of the failure of the lessor to restore the building the lessee may, without prejudice to his other remedies, terminate the lease, the lessee's interest in the lot continues after the destruction of the building by fire and he has the right to possession for the term of the lease.

5. SAME—*a lease must be construed according to intention of parties.* In the interpretation of a lease of part of a building, containing covenants and stipulations as to the rights of the parties in case the building is destroyed, the question as to whether the lease grants any estate in the lot or land on which the building stands must be determined from the intention of the parties as expressed in the lease.

6. SAME—*provisions of a lease must be construed together, if possible.* In the construction of a lease each part must be construed with reference to the others and so that every part may stand, if possible.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. EDMUND K. JARECKI, Judge, presiding.

AUSTIN J. ROONEY, for appellant.

ROSENTHAL, HAMILL & WORMSER, (LESSING ROSENTHAL, and HARRY MARKHEIM, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant, Mary Szulerecki, recovered a judgment in the municipal court of Chicago against Julius Oppenheimer in an action of forcible entry and detainer for the possession of the premises described as No. 4708 South Ashland avenue, Chicago. The Appellate Court for the First District reversed the judgment and granted a certificate of importance, and she has appealed from the latter judgment.

The premises face east, with a 25-foot front, and extend west about 110 feet to an alley. Appellant leased "the entire first floor and basement of the three-story brick building known as No. 4708 South Ashland avenue, Chicago, to be occupied for mercantile purposes," from May 1, 1908, to April 30, 1918, at a monthly rental of $100, to be paid in advance on the first day of each month during the term. On the lot was a building the front 50 feet of which was a three-story brick over a basement. There was a one-story frame extension extending back about 60 feet, which had no basement. Appellee owned the adjoining lots on the north and south sides of the premises in question and conducted a department store in the buildings on the three lots. The second story of the leased brick building was occu-

pied by a dentist under a lease from appellant, the terms
of which do not appear in the record, and the third story
thereof was occupied by a tenant of appellant from month
to month. On December 24, 1914, a fire destroyed the
buildings on the three lots. Only the foundation and base-
ment and a small part of the north and south walls of the
leased brick building remained after the fire, and the frame
extension was also destroyed. The lease was on a printed
form, and one of the clauses bound appellee to "keep the
said premises in good repair, replacing all broken glass with
glass of the same size and quality as that broken, and to
keep the said premises and appurtenances, including catch-
basins, vaults and adjoining alleys, in a clean and healthy
condition, according to the city ordinances and the direc-
tion of the proper public officers, during the term of this
lease, at his own expense, and will, without injury to the
roof, remove the snow and ice from the same when neces-
sary and clean the snow and ice from the sidewalks in front
of said premises." The following clause of the printed
matter in the lease was erased or ruled out with red ink:
"In case the premises shall be rendered untenantable by fire
or other casualty, the lessor may, at his option, terminate
this lease or repair said premises within thirty days, and
failing so to do, or upon the destruction of said premises
by fire, the term hereby created shall cease and determine."
In lieu of the clause so ruled out there was written with
pen and ink in a blank space of said printed form, as a
part of the provisions of the lease, the following paragraph:
"In the event that said demised building, or any part there-
of, shall be rendered untenantable by fire or other casualty,
or be damaged, condemned or taken by the public authori-
ties, the lessor shall, and agrees to, restore the same within
ninety days after any such loss, damage or destruction, and
the lessee shall not be obligated to pay any rent for the
part of the demised premises rendered untenantable while
the same are not tenantable. In the event of the lessor's

failure to restore the same, as aforesaid, the lessee may, at his option but without prejudice to his other remedies, terminate this lease." Appellant did not restore the building after the fire or make any effort to do so. On April 24, 1915, appellee served notice on appellant that unless she restored the building he might elect to build the same at her expense. In September, 1915, he commenced the construction of a one-story brick building, with terra cotta exterior, connected with his premises on the north and south, covering the entire lot. The roof extends from the south wall of appellee's building on the south to the north wall of the leased lot and is supported by iron columns on the north and south sides of the leased premises.

Two questions are properly raised on this record for decision by this court: (1) Did the lease manifest an intention of the parties, and was it effectual, to convey an estate in the lot as well as in the first floor and basement of the building, or did it simply and only convey a leasehold interest in the parts of the building? (2) Did appellant make out a case by this record that entitled her to the judgment in forcible entry and detainer rendered by the lower court? A third question is also presented by appellee and discussed by both parties to the record, to-wit, did appellee, upon the failure of appellant to restore the building, have the right, under the lease, to restore the portions of the building leased to him and charge the expense thereof to appellant? This last proposition does not properly arise on this record and will not be further considered, as the question before the court is simply and only one of the right of possession.

This suit was brought for the recovery of the possession of the whole of the lot described as No. 4708 South Ashland avenue, in Chicago, and not simply for the recovery of "the entire first floor and basement of the three-story brick building" situated on said lot. If, as contended by appellant, the lease in question did not convey any interest in said lot and building except the first floor and basement

and such use of the lot and other portions of the building
as would enable appellee to use and enjoy the first floor and
basement for the purposes of his lease and to perform the
covenants enjoined upon him by the terms of the lease, and
such leasehold rights of appellee were destroyed and deter-
mined by the destruction of the building by fire, then it is
clear that there was not, and could not be, any holding over
by appellee of the premises leased to him after his lease
had expired.    Under such a construction the parts of the
building leased were destroyed and were. not in existence
after the fire, and there could be no such thing as a with-
holding or holding over of the leased premises after the ·
fire, lawfully or unlawfully.    The facts show clearly that
what appellee did after the fire was to retain or to take pos-
session of the lot after the building had been entirely de-
stroyed.    He did not retain any part of the building leased
by him for the simple reason that the building was no
longer, in contemplation of law or in fact, in existence, and
appellant is not seeking by her proof to recover simply a
part of the building but the lot itself, which she insists he
did not lease from her.    It is very clear, then, that there
can be no recovery under the fourth clause of section 2 of
the Forcible Entry and Detainer act for the withholding by
appellee of the leased premises after the lease had expired
or by notice to quit, etc., as appellee was not in default in
failing to comply with any other of the terms of his lease.
This is so because if, as contended by appellee, the lease is
to be interpreted as a lease to appellee of the lot and the
first story and basement of the building, excepting the sec-
ond and third stories, the lease had not by its terms expired
by several years, and he would in such case be entitled to
possession, after the fire, of the naked or vacant lot in ques-
tion.    If, on the other hand, appellee's lease is to be inter-
preted as a lease simply and only of the first story and
basement of said building, the destruction of the building
terminated the lease·and gave him no right to thereafter en-

283 – 34

ter upon the possession of the naked lot,—the part of the premises not leased by him. Before appellant or the one legally entitled to the possession of the lot in such case could recover in a forcible entry and detainer suit the possession of the lot against appellee after the fire and after he had taken possession thereof it would have ·been incumbent on such party to prove his right to the possession thereof, or at least a right to recover such possession under some one of the other clauses of the Forcible Entry and Detainer act. Appellant did not establish such a right by simply introducing the lease showing that appellee was her tenant of other and different premises than those sued for and by proving the destruction of the leased premises by fire, and which other premises, according to her claim, had no existence. (*Harrington* v. *Watson,* 11 Ore. 143.) Under appellant's contention appellee was not estopped by his lease to deny her title for the simple reason that the premises for which she was suing were not the premises leased by her to appellee, (Jones on Landlord and Tenant, sec. 692,) and unless she has affirmatively established her right to recover in this suit by showing that the terms of the lease had expired by the destruction of the premises leased by appellee, and by a further showing that she is entitled to recover· the possession of the property sued for, the judgment of the Appellate Court against her must be affirmed. One suing under the Forcible Entry and Detainer act must show a right of possession in himself, and he cannot rely upon the lack of right in those whom he seeks to dispossess. *Fitzgerald* v. *Quinn,* 165 Ill. 354.

The principal and decisive question in the case is whether the destruction of the building by fire and appellant's failure to restore it within ninety days terminated the lease and appellee's right to possession of the premises. A lease of rooms in a building conveys no interest in the soil upon which the building stands, except so far as necessary to. the enjoyment of the portion of the building demised. The

existence of the building is essential to the enjoyment of
the portion demised, for if it is destroyed there is nothing
upon which the lease can operate. The destruction of the
building, therefore, terminates such a lease even when the
lease is of the basement story or the cellar of the building.
(*Winton* v. *Cornish,* 5 Ohio, 477; *Shawmut Nat. Bank*
v. *Boston,* 118 Mass. 125; *Graves* v. *Berden,* 26 N. Y. 498;
*Stockwell* v. *Hunter,* 11 Metc. 448; *McMillan* v. *Solomon,*
42 Ala. 356; *Nashville, Chattanooga and St. Louis Railway
Co.* v. *Heikens,* 112 Tenn. 378; *Humiston, Keeling & Co.*
v. *Wheeler,* 175 Ill. 514; 16 R. C. L. 710, sec. 200; 2 Un-
derhill on Landlord and Tenant, sec. 789.) When a build-
ing is rented without any language indicating that only the
building itself is leased as distinguished from the land, both
the building and the land pass under the lease and a destruc-
tion of the building will not end the lease. (*Humiston,
Keeling & Co.* v. *Wheeler, supra.*) In like manner the
lease of a building described by street number carries with
the building the lot on which it is situated and which is
used in connection with the building. (*Kuschinsky* v. *Flani-
gan,* 170 Mich. 245.) It has also been ruled in many cases
that where only a room, or an apartment or a cellar, or a
basement and a floor, are the subjects named in the instru-
ment as demised, by reason of certain other covenants or
stipulations in the lease a grant of the soil on which the
building containing the subjects of the demise is situated
will be implied, where the interpretation of such covenants
and stipulations in connection with all the other provisions
of the lease appear to lead inevitably to the conclusion that
such grant was intended by the parties. In the interpreta-
tion of a lease containing such covenants and stipulations
the real question is whether the intention of the parties,
to be collected from the whole lease, was to grant to the
lessee any estate in the lot or land described. (*Shawmut
Nat. Bank* v. *Boston, supra; Winton* v. *Cornish, supra.*)
"A lease contract, like all others, must be construed accord-

ing to the intention of the parties and with reference to the subject matter." (*Snook & Austin Furniture Co.* v. *Steiner & Emery,* 117 Ga. 363; *Kerr* v. *Merchants' Exchange Co.* 3 Edw. Ch. 316.) "Where such is the intent of the parties the term may continue after the building is destroyed, even though no rent is to be paid until its restoration." (*Snook & Austin Furniture Co.* v. *Steiner & Emery, supra.*) In the construction of a lease every part must be construed with reference to all other portions of the lease and so that every part may stand, if possible, and no part of it, either in words or sentences, shall be regarded as superfluous or void if it can be prevented. *Morris Co.* v. *Southworth,* 154 Ill. 118.

Although the specific description of the premises demised in the lease in question is simply "the entire first floor and basement of the three-story brick building known as No. 4708 South Ashland avenue," still we are forced to the conclusion, after fully and fairly considering all the other provisions of the lease, that it furnishes an exception to the general rule that such a demise must terminate the interest of the lessee in the lot leased, by reason of the total destruction of the building. In the first place, the printed clause of the deed which was ruled out with red ink gave appellant the express option to terminate the lease in case the premises should be rendered untenantable by fire or other casualty or to repair the same within thirty days, and it further provided that the term should cease and determine if appellant failed to so repair or in case the premises were destroyed by fire. The removal of this clause from the lease by the parties would not, when considered alone, have much, if any, significance in determining the intention of the parties, but when this fact is considered in connection with the paragraph that was added in lieu of the erased portion it does have a bearing on the question of intent. The erased portion removed entirely from the lease the express option of appellant to terminate the lease or re-

pair in case the premises were rendered untenantable by fire
or other casualty, and also removed the express option of
appellant to terminate the lease in case the premises were
totally destroyed by fire. The removal of those clauses and
the substitution of other clauses entirely inconsistent with
them must be certainly regarded as having some bearing in
arriving at the question of intent.

An examination of the added paragraph reveals the fact
that the provisions therein expressed are entirely inconsist-
ent with the erased portion aforesaid, and, in fact, the in-
tent there expressed is the very opposite in meaning to that
expressed in the words erased. In the added clauses no
option whatever is given to appellant. She positively cove-
nants, without equivocation, in the first place, that she will
restore the demised building, or any part thereof, "within
ninety days after any such loss, damage or destruction."
The words "such loss, damage or destruction" refer to the
loss, damage or destruction mentioned just preceding those
words,—*i. e.*, the rendering of the building, or any part
thereof, untenantable by fire or other casualty or damage
or destruction by condemnation by the public authorities.
It is argued that this portion of the added clause is merely
a covenant on the part of appellant, and that she is only
bound to answer unto it by responding in damages for its
breach when sued therefor by appellee. Let us further con-
sider this clause with the other portions of the written pro-
visions. The next provision is a stipulation or covenant
that appellee "shall not be obligated to pay any rent for the
part of the demised premises rendered untenantable while
the same are not tenantable." This latter clause is directly
connected with the preceding one by the word "and," and
the words "rendered untenantable" and "while the same are
not tenantable" clearly mean rendered untenantable by fire
or other casualty or by reason of being damaged or de-
stroyed by condemnation proceedings. These clauses argue
strongly for appellee's contention that his rights were not

to be considered as destroyed in case the building was destroyed. Why should the lease provide that appellee should not pay rent under such circumstances, if, as appellant contends, appellee had no further interest in the premises when the building was destroyed by fire and consequently no further liability to pay rent? Said two covenants or provisions, when coupled together, clearly indicate a recognition on the part of appellant that appellee's interest in the lot would still continue after the building was destroyed. All words and clauses in the lease must be considered as having some force and meaning, and not as meaningless and useless, in arriving at the question of intent.

The last clause of the added written portion of the lease clears up all doubts, if any existed without it, as to appellee's rights in the lot. It expressly provides that if appellant failed to keep her covenants to restore the building, appellee might, at his option, terminate the lease. Undoubtedly it cannot be questioned that he is given such option by this clause in the lease. If he had no interest in the premises when the building was destroyed by fire, and consequently no liability for rent, how can it be said that he still has an option to terminate his lease? We would render the very words of the lease meaningless that give him an option to terminate the lease if we should hold that the lease was terminated when the building was destroyed. We are also of the opinion, after considering the whole of said written paragraph, that by a fair interpretation thereof appellant covenanted to restore said building if destroyed by fire or by a taking for public purposes by the public authorities. Under it she expressly covenants to restore the building if destroyed by a taking or damaging for public use. The plain meaning of the clause, "in the event that said demised building, or any part thereof, shall be rendered untenantable by fire or other casualty * * * the lessor shall, and agrees to, restore the same," etc., in view of all that follows, is that the building shall be restored in case

the same shall be rendered untenantable by destruction thereof by fire or other casualty.

There is no provision in either of the other two leases given by appellant inconsistent with the idea that appellee was given a leasehold interest in the lot in question by implication, such as appeared in the case of *Shawmut Nat. Bank v. Boston, supra.* In that case all the leases of the lessor to the various rooms and floors contained identical covenants. The bank in that case held the second lease given, in point of time. The court held, in view of such complications, that the bank did not take a leasehold interest in the lot on which the building stood because it was inconsistent to hold that any or all the parties having separate leases of different parts of the building, covering practically the same time and having the same provisions, took leasehold interests in the lot or ground on which the building was situated. The court did hold in that case that a provision in a lease that the rent shall be suspended or abated until the building shall be restored in case it should be destroyed by fire, has force to show that the lessor intended a lease which should continue after the building was destroyed by fire, and, when not controlled by other provisions, would lead to the implication of a grant of an estate for years in the land covered by the building. The same proposition is supported by Jones on Landlord and Tenant, sec. 679, citing *Rogers v. Snow,* 118 Mass. 118.

There are no other provisions in the lease in question that stand in the way of the interpretation that by implication it conveys to the lessee an interest in the lot on which the building stood that was not destroyed by the fire and that it gave appellee the right to retain the possession of the same during the term of his lease. All the provisions of the lease are in harmony with such interpretation. We therefore hold that appellant was not entitled to the possession of the premises in question and was not entitled to recover the possession thereof by her suit.

In view of the foregoing it will not be necessary for us to determine the second proposition aforesaid and argued by the parties in their briefs.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*