## Koplo et al. v. Ettenger.

*Landlord and tenant—Lease of store and basement of premises—Relative rights of landlord and tenant to sidewalk.*

The letting of a "portion of a store and basement" of a building is of the nature of an apartment lease, and the tenant has no standing to object to a subsequent lease by the landlord to third persons of a part of the sidewalk and one of the outer walls of the building for the purpose of conducting a lunch counter and stand for the sale of cigars and confectionery, unless the maintenance of the stand is injurious in some way or causes him inconvenience.

Statutory demurrer. Municipal Court, Phila. Co., Aug. T., 1923, No. 639.

*Harry J. Gerber*, for plaintiffs.

*Wolf, Patterson, Block & Schorr*, for defendant.

LEWIS, J., Dec. 29, 1923.—On Feb. 11, 1918, Oscar J. Bamberger & Co., as agents for the owner, leased to the plaintiffs "all that certain southern or corner portion of store and basement of premises situate and known as northeast corner Eighth and Filbert Streets" (being separated from the northern portion of store and basement of building by partition now erected), in the City of Philadelphia, for the term of six years and three months from March 1, 1918. The plaintiffs entered into possession of the demised premises in pursuance to the terms of the lease. The defendant is the assignee of said lease from the original lessors. Plaintiffs claim that on or about Feb. 1, 1920, defendant took possession of the southern wall and sidewalk of said store for his own separate use, and "did lease the same to third parties for the purpose of having the latter conduct a lunch counter and stand for the sale of cigars and confectionery." That this was done without the plaintiffs' consent, and that the defendant for a period of forty-three months had possession through his tenant of said wall and sidewalk.

The plaintiffs claim that the defendant has been receiving $50 per month for forty-three months as rental of the said southern wall and sidewalk from the lessors thereof, averring that this sum is the value of the space thus rented, and claim that the defendant should pay them the sum of $2150, being the rental for forty-three months at $50 per month.

To this statement of claim the defendant filed a statutory demurrer, pursuant to section 20 of the Practice Act of May 14, 1915, P. L. 483, contending that the statement of claim in no respect, and at no point, sets up a claim which can be supported in law, and, therefore, no liability on the defendant is shown.

The principal question to be determined by the court is, what did the plaintiffs get by the terms of their lease? It is to be noted that the plaintiffs do not allege in the statement of claim that the right of ingress or egress to the demised premises has in any wise been interfered with by the defendant.

Did this lease give the lessees any interest in the land beyond that directly connected with the leased premises? The lease does not mention any right of way or other easement on the lot in question on which the building is situate. In fact, the lot is nowhere described in the lease, and, therefore, a grant of easement cannot be implied unless it is made necessary to the enjoyment of the thing granted. There is no allegation in the statement of claim of any such necessity. The lease indicates quite clearly that the intention of the parties was to do what its plain terms provide; that is, to demise to the plaintiffs the southern or corner portion of the store and basement of premises northeast corner Eighth and Filbert Streets, Philadelphia, and nothing

4 D. & C.

more. It would seem that this would give the plaintiffs no interest in the land.

As was said by Walker, C. J., in McMillan v. Solomon, 42 Alabama, 356:

"Our first proposition is, that by the lease of apartments in a house in a town, for the purpose of trade, the lessee takes no interest in the land independent of, and distinguishable from, the apartments rented, and only such interest as is involved in the enjoyment of the rooms upon it rented. In the statement of our proposition we embrace the elements of location in a town and of use for the purposes of trade. . . . We must distinguish between the lease of apartments in a house, as in this case, and the lease of a house. The authorities are very strong to the point that a lease of a house will pass at least the subjacent land. . . .

"Without involving ourselves with any question of controversy in English law, we may admit that a house, ex vi termini, at least embraces the land upon which the building is erected. This does not, however, affect the precise question in hand. A house and apartments within it are not the same. House may include the subjacent land, but apartments within it may not. It often occurs that each apartment of a house of several stories is leased to a different person. Upon reason and justice, each lessee has an interest in the land, in so far as it supports the building, and, therefore, conveyances or leases of the apartments may be within the statute of frauds: Inman v. Stamp, 1 Starkie's R. 12; Stockwell v. Hunter, 11 Met. 448; Taylor on Landlord and Tenant, § 30. No such interest as would protect the lease of the several tenants could exist, if with the lease of the lowest apartments, or any one or more of the other apartments, a right to the soil independently of, and separately from, the enjoyment of the apartments vested. The lease of the rooms of a house, by the force and meaning of the word, do not carry any distinguishable interest in the land, and there is no principle, and certainly not a preponderance of decisions, giving to it that effect."

"A lease devising the basement and first floor of a building, and nothing more, does not give the lessee any interest in the land beyond that directly connected with the leased apartments, and such a lease is a letting of apartments and not of land:" Bland, P. J., in Seidel v. Bloeser, 77 Mo. App. 172.

As was said in Raynes v. Stevens, 219 Mass. Rep. 556, 557: "The lease was not of a whole building or a whole floor, but of one room and the cellar underneath it. This gave to the plaintiff no rights outside of the one room and the cellar, except such as plainly were intended by the parties to be included in the leased premises as appurtenant thereto or parcel thereof, either because they were really necessary to the beneficial enjoyment of the demised property for the purpose for which it was leased, or because it was manifest from the condition and situation of the property and the attendant circumstances that they had been designed and appropriated for the benefit of that property."

And in Cunningham v. Entrekin, 3 Dist. R. 291, Thayer, P. J., said: "The plaintiff in this case, who is engaged in the business of a merchant tailor, rents the first floor, the front door of which is on Columbia Avenue and the rear door on Broad Street. The defendant, who is a photographer, rents the second-story room immediately over the plaintiff, and his entrance and exit is by the door on Broad Street. After he had moved in, he placed upon the pavement by the side of this door a show-case for the exhibition of his pictures. There is no evidence that this show case obstructs the passageway into or out of the building, or that it is injurious or inconvenient to any one. The plaintiff, however, conceiving himself apparently to be the owner of the street pavement as well as of the store which he occupies and rents, brought

this bill against the defendant, in which he seeks to enjoin the defendant from maintaining his show-case upon the sidewalk. . . . Where a house is rented out to different tenants, each occupying the room which he has let, the doctrine of ownership *usque ad filum viæ* has no application. The plaintiff in this case had no more ownership of the sidewalk than the defendant or the tenants of the other rooms had. All that any of them were entitled to there was an uninterrupted passageway in common with the public, for none of them had any lordship of the soil outside of his several domain."

On the other hand, there is considerable and respectable authority for the proposition that a lease of a building or a part thereof for business purposes gives the lessee, in the absence of expressed or implied agreement to the contrary, the exclusive right to the use of outside walls of the portion of the building covered by the lease, for advertising purposes. See, generally, note in A. L. R. 800.

In a well-considered opinion by Cardozo, J., in Stahl & Jaeger v. Satenstein, 233 N. Y. 196, it was held that an agreement by a tenant of a floor of a building that he will not place signs on the outer walls without the consent of the landlord does not entitle the landlord to permit the use of the walls by others for advertising purposes without the tenant's consent. See, also, Scott v. The Fox Optical Co., 21 Pitts. L. J. (N. S.) 368.

In Hele v. Stewart, 19 W. N. C. 129, it was held that the leasing of apartments for business purposes by a lease drawn in the ordinary form did not entitle the lessee to use the front walls of the building for the purpose of proper signs and advertisements of his business.

In the case at bar there is a covenant in the lease as follows: "The lessee shall not erect, or cause to be erected, any signs without the written consent of the lessors or their agent."

The right of tenants to use the portion of the exterior of the walls inclosing the leased premises for the placing thereon of their signs is a privilege acquired from universal custom—a mere incident to, not a parcel of, the demised premises—and, consequently, not derived from title, and the landlord may deprive his tenants of such privilege by stipulations in the lease, in which case, the ownership of the walls remaining in him, he may use their outside surfaces for advertising purposes to secure revenue: Fuller v. Rose, 110 Mo. App. 344.

The substantial question in this case is, what did the parties intend by their contract? From a reading of the lease, it is quite apparent that the plaintiffs were simply to get the right to the premises exactly as demised. The fact that the plaintiffs had permitted the defendant, or his tenants, to occupy the portion about which they now complain for a period of more than forty-three months, it seems to us, is in itself an indication that the plaintiffs at no time considered the portion for which claim is made as part of the demised premises. See 1 Tiffany, Landlord and Tenant, 271.

It is quite clear that there is nothing in the lease which would indicate that the lessee ever got possession of the outer walls of the demised premises. Certainly there cannot be in the plaintiffs a private right of way existing in the public highway. The location of a street or highway extinguishes a private way. If the defendant's lessees obstructed the full enjoyment of the premises rented and occupied by the plaintiffs, the defendant might properly be enjoined, but there is no allegation in the statement of claim of any such obstruction. There is no allegation whatever that the maintenance of a stand was injurious, or that it in any way inconvenienced the plaintiffs. It was a portion of a floor of a building that was rented to the plaintiffs. It is the

4 D. & C.

same as though a definite room in a building had been demised to the plaintiffs. In such case the demise would exclude the outside walls. Where a floor or story is demised, the apparent intention is to separate a section of the building as a distinct tenement, in which case the lateral boundaries are fixed by the outside boundaries of the building; but where a room, or portion of a room, is demised, especially where the adjoining portions are occupied by other tenants, it merely includes the perpendicular planes of the building which bound the portion of the house described by it, and, therefore, excludes the outside walls: Lowell *v.* Strahan, 145 Mass. 1.

We conclude, therefore, that the statement of claim filed in this case does not present a good cause of action. The question of law raised in the affidavit of defence in the nature of a demurrer is determined in favor of the defendant and against the plaintiffs.