# McMILLAN *vs.* SOLOMON.

[ACTION ON PROMISSORY NOTE GIVEN FOR LEASE OF STORE-ROOM.]

1. *Lease of apartments ; destruction of, by fire.*—By the lease of apartments in a building, in a town, for the purpose of trade, the lessee takes only such interest in the subjacent land as is dependent upon the enjoyment of the apartments rented and necessary thereto ; and if they are totally destroyed by fire, this interest ceases.

2. *Same ; same.*—The relation of landlord and tenant, upon such a lease, is dissolved by the destruction of the apartments by fire, and thenceforward, the lessee has no interest in, or right to the land, of which, an eviction can be predicated.

3. *Same ; same.*—By the destruction of the entire subject of the lease, the accruing of rent ceased, and the landlord can only recover the rent up to the time of the fire.

APPEAL from the Circuit Court of Talladega.
Tried before Hon. JOHN HENDERSON.

THE facts of this case are stated in the opinion of the court.

JOHN T. HEFLIN ; RICE, SEMPLE AND GOLDTHWAITE, for appellant.
J. B. MARTIN, *contra.*

A. J. WALKER, C. J.—After the commencement of a lease for one year, of certain rooms and cellars of a storehouse in a town, for the purpose of trade, the building was

McMillan v. Solomon.

destroyed by fire, not attributed to the fault of any person. Before the expiration of the term, the lessor entered upon the premises without the consent of the lessee, and commenced the erection of a new building upon the locality of that which had been consumed, and retained possession to the end of the term. In a charge to the jury in a suit on the note given for the rent, the court below asserted the proposition, that this entry was an eviction of the lessee, and the plaintiff could not recover.

In this charge, we think, there is error. The plaintiff had a right to recover the rent up to the time of the fire, under an application of the doctrine of apportionment of rent. The propositions which, in their consecutive order, leads to this conclusion, may be numerically stated as follows, to-wit: 1. By the lease of the apartments in the building in a town for the purpose of trade, the lessee took only such interest in the subjacent land as was dependent upon the enjoyment of the apartments rented, and necessary thereto, and that such interest ceased with the total destruction of the apartments by fire. 2. That the relation of landlord and tenant was dissolved by the fire, and thenceforward the lessee had no interest in, or right to the land of which an eviction can be predicated. 3. That with the destruction of the entire subject of the lease, the accruing of rent ceased, and the landlord has only a right to recover a part of the rent proportionate to the period of the term antecedent to the fire.

1. Our first proposition is, that by the lease of apartments in a house in a town, for the purpose of trade, the lessee takes no interest in the land independent of, and distinguishable from the apartments rented, and only such interest as is involved in the enjoyment of the rooms upon it rented. In the statement of our proposition, we embrace the elements of location in a town and of use for the purposes of trade. We do this, not because we are sure they are indispensable, but because they are clearly presented in the case, and some of the authorities seem to attach some importance to them, and we do not wish, in this case, where we can find no precedent in our own juris-

prudence, to give our positions a greater latitude than is necessary.

We must distinguish between the lease of *apartments in a house*, as in this case, and the lease of a house. The authorities are very strong to the point, that a lease of a *house* will pass at least the subjacent land. In Sheppard's Touchstone (m. p. 90,) it is said, "by the grant of a *house*, the ground whereon it doth stand, doth pass." Lord Coke, in his Commentary upon Littleton, (Coke upon Lit. 55,) says that by the grant of a messuage or *house*, the orchard, garden and curtilage do pass; though in Keilway, 57, a difference is taken between messuage and house. In Chard & Tucks' case, 1 Leonard, 214, (S. C. Cr. Eliz. 89,) the word messuage was held to include the curtilage and garden. In *Smith v. Martin*, 2 Saunders, 401, the plaintiff alleging himself seized in fee of a house, whereof a garden-house and garden were parcel, and declared for an injury to the garden-house and wall. Objections being made to the pleadings, it was decided, that a garden may be said to be a parcel of a house, and by that name will pass in a conveyance. In *Doe, ex dem. v. Collins*, 2 Term R. 499, the distinction between messuage and house is denied, and the largest latitude of import is allowed the latter. Other English authorities upon the subject, will be found collated in note two to *Smith v. Martin, supra.*

Without involving ourselves with any question of controversy in English law we may admit that, house, *ex vi termini*, at least embraces the land upon which the building is erected. This does not, however, effect the precise question in hand. A house and apartments within it, are not the same. House may include the subjacent land, but apartments within it may not. It often occurs that each apartment of a house of several stories, is leased to a different person. Upon reason and justice, each lessee has an interest in the land in so far as it supports the building, and therefore conveyances or leases of the apartments may be within the statute of frauds.—*Inman v. Stamp*, 1 Starkie's R., 12; *Stockwell v. Hunter*, 11 Met. 448. Taylor on Landlord and Tenant, § 30. No such interest as would protect the lease of the several tenants could exist, if with the

lease of the lowest apartments, or any one or more of the other apartments, a right to the soil independently of, and separately from the enjoyment of the apartments vested. The lease of the rooms of a house by the force and meaning of the word, do not carry any distinguishable interest in the land, and there is no principle, and certainly not a preponderance of decisions, giving to it that effect.

In *Doe, ex dem. v. Burt*, 1 Term, 701, the facts were, that there was a lease of certain premises, including a yard in Westminster, and that beneath the yard there was a cellar with wine vaults used independently of the premises. There was an unanimous rejection of the proposition, that a lease of the yard included the cellar and wine vaults beneath, which was pressed, upon the maxim, *"cujus est solum, ejus est, usque ad coelum et ad inferos."* The decision is obviously put upon the ground, that the lease split up the freehold, and by the term yard, conveyed only that which was used as a yard, and by way of illustration, the cases are put of a lease of a room on the ground floor, where there was a cellar beneath separately used, and of a lease of a house in the Adelphi, under which there were warehouses, in the former of which, the cellar, and in the latter the warehouses, would not pass. In the case of *The Proprietors, &c. v. City of Lowell*, 1 Met. 538, an incorporated church owned the land and a building thereupon erected, which consisted of a cellar and two stories. The cellar and upper story were used for the purposes of the church, while the lower or basement story was cut up into store-rooms, and rented for secular purposes. It was decided that a statute exempting houses of religious worship from taxation, did not apply to the basement rooms ; the court remarking, that there may be several distinct tenements under the same roof, and tenements are as essentially distinct, when one is under the other, as when one is by the side of the other. There are two cases settling questions rather outside of the line of our argument, to which we nevertheless refer as illustrating the distinct interests which may exist in the several apartments of a house separately from any separate interest in the land.—*Loring v. Bacon*, 4 Mass. R. 575 ; *Chelsborough v. Green*, 10 Con. 318. This

proposition is sustained by the text of Taylor's Landlord and Tenant, § 520, where it is said that when the subject matter of the demise is destroyed, the lease perishes with it. See, also, to same effect, Smith's L. and T., note *a*.

2. The remaining two propositions—first, that the tenancy was dissolved by the destruction of the building; and secondly, that no recovery of rent after such destruction, can be had, must be treated together, as most of the authorities relate to both subjects. First, we find the doctrine of our proposition clearly announced in this country, in *Winston v. Cornish*, 5 Ohio, 477. That case was in reference to the lease of a store-room, and the cellar beneath, of a house in the city of Cincinnati, several stories high, the upper rooms of. which were leased to other persons than the lessee of the store-room and cellar. After a fire occurring during the term, and consuming the entire building, the lessee of the store-room and cellar beneath, built a small house over the cellar, the roof of which did not extend higher than the ceiling of the store-room he had formerly occupied, so that his occupation upon the ground and in the air after the fire, did not exceed the limits of his previous occupation. The lessor brought an action to eject him before the expiration of the period of his lease, and the supreme court of Ohio sustained the action, maintaining that nothing passed by the lease except the rooms, and that the land did not pass, and that the tenancy ceased with the destruction of the building. The following extract will indicate the tenor of the argument: "The owner of land can convey it, or the profits of it, for such terms and in such parcels as he thinks proper. He can grant the right to take all the minerals underneath, or those twenty feet below the surface only; to dig all the turf, to inhabit a cave, if there is one, to occupy a room in the third story, or a part of the cellar. By such grants the land does not pass. When the mineral or turf is exhausted, the grantee has no right even to enter the premises. When the cave is destroyed by a convulsion or otherwise, there was nothing that was granted remaining. It is so of the rooms or cellar of a house."

The Ohio decision was followed by one in New York;

*Kerr v. The Merchant's Exchange Company*, 3 Edward's Ch. R. 315. In that case, the lessee of rooms, including cellar, after the building had been burned, and a new building erected, during the term of lease, sought to obtain possession of rooms in the new building, corresponding as nearly as possible with the rooms leased. Relief was denied, and it was held, that by the entire destruction of the building, the relation of landlord and tenant was dissolved ; that the lessee's right of occupation, and the lessor's rent ceased. In the opinion a distinction is drawn between the lease of a house embracing the land on which it is situated and the apartments of the house. It was concluded that when the building was burned the lessee's interest ceased, and he was no longer liable upon his covenant to pay rent. This decision was reviewed by the supreme c ourt of New York, in *Graves v. Berdan*, 29 Barbour, 100, and was fully sustained. In this last case, it was decided that destruction by accident alfire, was a defense, so far as the subsequently accruing rent was concerned, to the action upon the covenant to payment, and the decision is made upon the ground that the relation of landlord and tenant was dissolved by the entire destruction of the subject matter of the tenancy. There is now a statute in New York which relieves a tenant from payment of rent after a destruction of the subject of the lease, but the decisions which we have cited above, were made before the adoption of that statute, and of course are not based upon it, but upon principles of common law. The case of *Morgan v. Lambert*, 3 Barr, 444, does not affect the question. In that case, there was a lease of the *land*, and consequently, the burning of the house did not destroy the right of the lessee. After the destruction of the house by fire, the lessor, during the term, entered upon the premises, and did various acts of ownership. In a suit to recover the rent, the supreme court of Pennsylvania, in a very brief opinion delivered *per curiam*, thus disposed of the question : "If the landlord took possession of the ruins for the purpose of rebuilding, without the consent of the tenant, it was an eviction of him ; if with his assent, it was a rescision of the lease,

23

and in either case the rent was suspended." It will be perceived, that in that Pennsylvania case, the express inclusion of the ground in the lease, excluded the question of this case, whether the lease of apartments carries a separable interest in the land, and whether the right to rent ceases with the destruction of those apartments. In *Stockwell v. Hunter*, 11 Metcalf, 448, it was decided that a demise of the basement room of a building several stories high, gives the lessee no interest in the land, which continued after the destruction of the building, notwithstanding the rent was paid in advance, and that the whole building being destroyed by fire, the interest of the lessee terminated. The question of the right to recover rent after the fire, did not arise in that case, but the court, *arguendo*, indicates that it would not tolerate the collection of such rent by a landlord who had entered for the purpose of rebuilding. The supreme court of Georgia, in *Alexander v. Dorsey*, 12 Geo. 12 affirmed a judgment on a note for one year's rent of a lower room in a large building in the city of Griffin, which was burned during the term. The only question which the court considered or discussed was, whether an entry upon the premises after the fire by the lessor for the purpose of rebuilding, constituted an eviction. The court disposed of this point in the following language : "To rent *lands* is one thing, but to rent a room in the second or any other story of a house is another, and quite a different thing. By the former, the land itself passes ; by the latter, nothing but what comes strictly within the meaning of the contract; * * * but when the whole is destroyed by fire, it never was intended by the parties to prevent the proprietor from re-entering the premises for the purpose of re-constructing the row or block upon the ground where the former stood." While the learned judge thus distinctly concludes, in effect, that the lessee had no distinct interest in the land, and that the tenancy was determined by the fire, he says nothing upon the other question, whether the rent ought to cease with the dissolution of the relation of landlord and tenant. The negative seems to have been assumed, without examining the point, and without observing that the opposite conclusion had been attained in New

York, many years before.—*Kerr v. The Merchant's Exchange Co., supra.* The judgment was probably upon a recognition of the unquestionable general proposition, that a destruction of a building does not absolve from the performance of an express promise or a covenant to payment, without observing its precise limits, and the reason on which it is founded. This proposition is sustained by an irresistible array of authority, both in England and America.—3 Kent's Com., m. p. 465.; 1 Parsons on Con. 505 ; Taylor's Landlord and Tenant, pp. 208, 209, 244, 245 ; §§ 327–331, 375–373 ; Chitty on Con. 330 ; Selwyn's Nisi Prius, 1402 ; Arch. Law of L. and T. 145, 157 ; Rawle on Covenants of Title, 607, note 1 ; Comyn's Landlord and Tenant, 211, 212 ; *Gates & Colvin v. Green,* 4 Paige Chan. 355 ; *Patterson v. Ackerson,* 1 Edwds. Chan. 96 ; *Hallet v. Wylie,* 3 Johns, 43 ; *Harrison v. Murrell,* 5 Monroe, 359 ; *Perry v. Hewlet,* 5 Porter, 318 ; Chancellor Kent, (3 Kent's Com. 465,) collects and examines several of the authorities.

In all the cases cited by him, there was something of the subject matter of lease remaining. There was not an entire annihilation of it. Many of the cases are in reference to leases of houses which included, as we have already seen, the land, and in some of them expressions are made, confounding the destruction of the house with the entire destruction of the subject of the lease, which would mislead unless limited by the facts of the case. We refer to the argument and criticism of several of the cases in *Graves v. Berdan,* 29 Barb. 100. In the case of *Haltzapeel v. Baker,* 18 Vesey, 115, the chancery court refused to interpose in behalf of a lessee, the house having been consumed by fire. The same lease came before the court of law, (4 Taunt, 44,) where Lord Mansfield distinctly put the right to recover rent upon the ground, that the land included in the lease, was still in existence. The distinction between the leases where there is a total, and where there is a partial destruction, is illustrated by three cases collected in 3 Viner's Abridgment, 14, (apportionment C,) as follows : "If a man leases land for life or years, rendering rent, and after part of the land is surrounded by fresh water, this will not make any apportionment of the rent, because the soil re-

mains, and the lessee shall have the fish in the water, and by ordinary intendment, this may be regained again;" "but if a man leases for life or years, rendering rent, and part of the land is surrounded with the sea, this will make an apportionment of the rent, for though the soil remains to him, yet the water is part of the sea, and so is common to every man to fish therein, as well as the lessee, and by ordinary intendment, there is not any possibility of regaining it." "If part of the land in lease be burned with wildfire, yet this will not make any apportionment, for the land remains notwithstanding, and cannot be so consumed, but some benefit may be made thereof." In *Upton v. Townsend*, 32 E. L. & E. 212, it is probable the lease conveyed the land, and therefore the entry of the landlord after the destruction of the building, was considered an eviction. The doctrine, that with the dissolution of the tenancy, the rent stops, and must be apportioned, is sustained by writers on the law of landlord and tenant.—Com. L. & T. 216; Gilbert on Rents, 186; *Harrison v. North*, Cases in Chan. 83. Where there is a lease of the mere apartments of a house, and those apartments are destroyed, the thing rented is gone. There is nothing which is leased, or held in tenancy. There can be no longer a landlord and tenant. The relation having ceased, the payment of rent must cease. The landlord does not warrant that the premises shall be in any particular condition, but he does warrant that they shall exist.—*Hart v. Windson*, 12 M. & W. 67. It would be shocking to our sense of justice to compel a tenant to pay the rent of a room in a house for twenty years, which had been destroyed within the first twenty-four hours of the term. The rent in this case should be apportioned to the time of occupation before the fire.

Reversed and remanded.