Mr. Justice Wylie
delivered the opinion of the court:
According to the terms of the old lease, the rent was to cease until the house should be rebuilt by the landlord, but that lease contained no covenant binding the landlord to rebuild at all; so that he was left at liberty to rebuild or not at his option. If he chose not to rebuild during the term, the tenant was to be discharged from the payment of rent.
And since mutuality of obligation is necessary in every contract, .the tenant could not have been held for the rent after the house had been rebuilt, unless he elected to enter into possession of the restored premises. If, then, the landlord was not bound by any covenant to rebuild, and this discharged the tenant from his obligation as to the payment of rent, the lease was put an end to by the fire.
In Brown vs. Quitter, cited in 1 Selw., N. P., 471, Ld. Northington, Ch., said: “There is not any covenant from the landlord to rebuild. A court of equity can decree a specific performance in those cases only where clear directions can be given in what manner and when the act is to be performed. It would be most arbitrary in'me to decree a rebuilding in a case where there is not any covenant for the rebuilding. All that can be required from a court of equity is, in a case like this, when the action shall be brought for rent, to order an injunction until the houses are rebuilt or the lease delivered *184 up. In the present case there has not been any action brought for tbe rent, and the defendant (the landlord) has offered to accept a surrender of the lease, which is all the relief the plaintiff is entitled to.”
• Thus far we have assumed that the old contract, so far as it related to rebuilding, in ease of fire, was in force between the parties to the renewed one. Under that the tenant was not bound to rebuild, nor was the landlord. But if the premises should be destroyed by fire the tenant was to be released from payment of rent, and the loss was to fall upon the landlord. But this was changed in the new agreement, which provided for an extension of the term to a new party at the former rent, “ and on the same covenants therein contained, with s additional covenant that the said Herman Schmidt shall keep i said, premises in good order and repair during the said demi j or release and deliver the same in as good order as they are n o on the expiration of the said lease. ”
Nc ’, by all the authorities, this agreement bound the tenant himself to rebuild in case the premises should be destroyed by fire. We have seen that the first contract bound neither the landlord nor the tenant to rebuild in case the premises should be destroyed. The covenants of the old contract became, by reference, the terms of the new one, except as to this one additional stipulation, which bound the tenant in express and distinct terms. It may not have been the intention of either party to make it so, but the agreement is written, and we are bound to interpret it by its own terms; and in a case of such iniquity as the present claim it is not a matter of regret to find the plaintiff defeated by any accident.
As has been stated, the fire occurred on the 4th of March, 1870. The tenant, Schmidt, then abandoned the premises and they were taken possession of by the defendant, his landlord, who erected, and by the month of September following had completed, an expensive and commodious building, of which he took possession and occupied with his family, the rental value of which plaintiff claims to have been at the rate of $2,500 a year. The rental value of the property before the fire was shown not to exceed the amount of the reserved rent, namely $960. The object of the present action is to compel the landlord to pay the difference to his tenant for *185 the unexpired portion of the term, a little more than one year, and, under the instructions of the court below, the jury did find in his favor damages to the amount of $690.
But there remains to be presented another view of this subject, which we deem fatal to the plaintiff’s claim.
The subject of the lease was “ all that messuage, tenement, and premises known as house No. 468 on Eleventh street west, in the city of Washington, D. C. ” It was not a farm, or a piece of land, nor a lot in the city, but a “ house, ” used, as was shown in evidence, as a restaurant.
Now, it has been determined by several decisions in this country, and upon sound principle, that, where the lease contains no covenant to the contrary, destruction of the subject-matter of a demise will terminate the lease.
In Winston vs. Cornish, 5 Ohio R., 477, which was ejectment brought by the landlord to recover possession from the tenant after the demised premises had been destroyed by fire, the facts were these: The lease was of a store-room on the first floor and of the cellar beneath, in the city of Cincinnati. There were other rooms above, which were not included in the lease. The whole house had been burnt down during the existence of the lessee’s term. The lessee then built another house over the cellar, but of only one story, so that the space it occupied was not more extensive, either on the ground or above, than the premises he had leased. The contract required the tenant to pay his rent during the whole term, with no exception as to fire. It was decided that, the subject of the lease having been consumed, the lease itself was at an end.
The same doctrine was followed in New York in the case of Kerr vs. The Merchants’ Ex. Co., 3 Edwards’s Ch. R., 315, and in Graves vs. Borden, 29 Barbour, 100; and in Alabama in the recent case of McMillan vs. Solomon, 42 Ala., 356.
In Alexander vs. Dorsey, 12 Ga. R., the court say: “ To rent lands is one thing, but to rent a room is another and a different thing. By the former, the land itself passes; by the latter, nothing but what comes strictly within the meaning of the contract. But when the whole has been destroyed by fire, it never was intended by the parties to prevent the *186 landlord from re-entering the premises for the purpose of reconstructing.”
In Ainsworth vs. Ritt, 38 Cal. R., 89, the court held that, “ where there are no covenants to repair and where the land on which it rests is not leased also, the destruction of the building terminates the relation of landlord and tenant.”
The judgment below is to be reversed.