NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* I. H. HEIKENS.

(*Nashville.* December Term, 1903.)

1. **CHARGE OF COURT.** Not error to refuse request substantially charged in stronger language.

It is not error to refuse to charge a special request, where the court has charged the same in substance in language even stronger in favor of the party making the request than that contained in the request. (*Post, pp.* 383-384.)

2. **SAME.** Same. Case in judgment.

In an action to recover damages for the burning of a mill by sparks emitted from the engine of a railroad company, it is not error to refuse a special request to charge that plaintiff, in order to recover, must not only prove that the fire might have proceeded from defendant's engine, but must show by reasonably affirmative evidence that the mill was ignited by sparks emitted from defendant's engine, where the court charged that the burden was on plaintiff to prove that the building was destroyed by fire which originated from a spark from an engine of the defendant, and that the plaintiff, in order to make out a *prima facie* case, must prove by a preponderance of the evidence that the fire was caused by a spark from one of defendant's engines.

3. **SAME.** Failure to charge upon circumstantial evidence, without request, is not error.

Where there is no request for an instruction upon circumstantial evidence, the circuit judge cannot be put in error for a failure to charge thereon. (*Post, pp.* 381, 384.)

Railroad v. Heikens.

4.  **NEW TRIAL.**  Properly refused upon affidavit as to absence
     of witness, when.

There is no error in refusing a new trial upon affidavit that the
  testimony of the engineer on a certain engine was lost to de-
  fendant through no fault of its attorneys, where the defendant
  knew that said engine passed the building that day, and knew
  the very hour when it did pass, for the defendant has not ac-
  quitted itself of negligence in respect of the absence of the said
  engineer.   (*Post, pp.* 382, 384.)

5.  **PLEADING.**  Averment of possession is immaterial in suit
     for destruction of building by fire.

In an action by the owner and lessor for the destruction of his
  building by fire, an averment that he was in possession of the
  building is immaterial for whether in possession or not he could
  sue for an injury to his interest.   (*Post, pp.* 382, 384.)

6.  **LEASE.**  Of room, apartment, or · cellar ·in a building  ceases
     upon destruction of building.

Where the property rented is a room or apartment in a building,
  or a cellar, or some part of the. building as distinguished from
  the whole building, the destruction of the building brings the
  interest of the lessee to an end.   (*Post, pp.* 385-387.)

Cases cited and approved:   Winton v. Cornish, 5 Ohio, 477; Stock-
  well v. Hunter, 11 Metc. (Mass.), 448; Graves v. Berdan, 26
  N. Y., 498; McMillan v. Solomon, 42 Ala., 356; Ainsworth v.
  Ritt, 38 Cal., 89; Bank v. Boston, 118 Mass., 125; Alexander v.
  Dorsey, 12 Ga., 12; Harrington v. Watson, 11 Or., 143; Porter v.
  Tull, 6 Wash., 408; Kerr v. Exchange Co., 3 Edw. Chy., 316;
  Chesebrough v. Pingree (Mich.), 40 N. W., 747, 1 L. R. A., 529;
  Wattles v. Ice & Coal Co., 50 Neb., 251; Waite v. O'Neil, 76
  Fed., 408.

7.  **SAME.**  Of building carries land, when; and lessee is liable for
     rent after destruction of building.

Where a building is rented without any language indicating that
  only the building itself is leased, as distinguished from the sub-

Railroad v. Heikens.

jacent land, both the building and the land pass under the lease, and a destruction of the building will not end the lease, but the lease will continue to the end of the term, and the lessee is liable for the rent up to the expiration of such term. (*Post, pp.* 386-387.)

Cases cited and approved: Hicks v. Parham, 3 Hay., 225; Banks v. White, 1 Sneed 613; Hibbard v. Newman, 2 Bax., 285; Mc-Nairy v. Hicks, 3 Bax., 378; Waite v. O'Neil, 76 Fed., 408.

8. **SAME. Lessor and lessee may each sue for injury done his interest in premises.**

Where a leased building is destroyed by fire, through the negligence of another, the reversioner and tenant each have a right of action for the injury done to his estate in the premises, and in an action by the owner of the reversion, the value of the leasehold interest should be proved, and deducted from the total valuation of the building. (*Post, pp.* 387-392.)

Cases cited and approved: Colcough v. Railroad, 2 Head, 171; Wood v. Griffin, 46 N. H., 231; Dock Co. v. Armstrong, 17 Fed., 216; Sherman v. Iron Works, 2 Allen, 524; Getz v. Railroad, 105 Pa., 547; Crowell v. Railroad, 61 Miss., 631; Attersol v. Stevens, 1 Taunt., 202.

Case cited and disapproved: Austin v. Railroad, 46 N. H., 231.

FROM FRANKLIN.

Appeal from the Circuit Court of Franklin County.— M. M. ALLISON, Judge.

CLAUDE WALLER and LYNCH & LYNCH, for Railroad.

Railroad v. Heikens.

MURRAY & MURRAY and FRANK L. LYNCH, for Heikens.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Franklin county against the plaintiff in error to recover damages for the burning of a mill.   The jury rendered a verdict in favor of the defendant in error for $5,000, and thereupon the plaintiff in error appealed, and has assigned errors as follows:

"First.   There is no evidence in the record to support the verdict.

"Second.   The court erred in declining to charge the jury, as requested by the defendant, as follows:   'The plaintiff, to be entitled to recover in this case, must not only prove that the fire might have proceeded from the defendant's locomotive, but must show by reasonable affirmative evidence that said fire did originate from sparks emitted or thrown from defendant's engine.'

"Third.   The court erred in not defining to the jury in some way or instructing them as to the character of circumstantial evidence necessary to establish a fact.  As applied to this case, he should have told the jury that the circumstances shown in the evidence must be such as to make it at least probable, and not merely possible, that the mill was ignited by sparks emitted from defendant's engine.

"Fourth.   Because the defendant did not have the benefit of the testimony of J. A. Haley, its engineer on

engine No. 118, which witness would have shown conclusively that said engine, spark·arrester, etc., were in perfect condition, and were properly handled by him on the day of the fire. This testimony was lost to defendant through no fault of its attorneys, and a new trial should have been granted on the showing made by the affidavits of J. J. Lynch and J. A. Haley.

"Fifth. · The court erred in charging the jury as to the measure of damages as follows: 'If you find from the evidence in the case that the plaintiff would be entitled to recover, the amount of his recovery will be the value of the mill, engine, and boiler and whatever equipment was contained in the mill at the time it was destroyed by fire.' It being shown by the proof that the mill was incumbered by- a lease to Hubert Cherry, who was in possession and who owned the contents of the mill at the time of the fire.

"Sixth. The court erred in declining to charge the jury, as requested by defendant, as follows: 'The plaintiff alleges in his declaration that I. H. Heikens was the owner and in possession of the mill that was burned and before the plaintiff can recover this fact must be established by the proof. If the proof in this case established the fact that I. H. Heikens was not in possession of the property at the time of the fire, but had leased same to another, then plaintiff cannot recover.' "

Upon a careful examination of the testimony, we are of opinion that the first assignment of error must be overruled.

The second assignment is also overruled, because its substance appears in the charge of the circuit judge in language even stronger than that contained in the request.

The circuit judge, in substance told the jury that, before the railway company could be held liable, the plaintiff below must show that the building was burned by sparks from the engine, or that the fire was set out by the engine of the plaintiff in error.

The court said to the jury: "The burden is on the plaintiff in this case to prove that his mill and fixtures were consumed by fire, and that this fire originated from a spark from one of the defendant's engines." The court also said that, after the plaintiff below had proved that he owned the mill, and that it was consumed by fire, "and that the fire was communicated to the mill by one of the defendant's engines, then the burden of proof would be shifted to the defendant company," etc. Again, the court said: "The plaintiff, in order to make out a *prima facie* case, must prove by a preponderance or greater weight of the testimony that the fire was caused by a spark from one of the defendant's engines." The same thought is expressed in different language in other parts of the charge. Again, the court told the jury that the plaintiff would be entitled to recover, "provided the facts and circumstances were such as to make you believe that the fire was communicated by an engine, and that the engine was not properly equipped, or was out of repair, as I have explained to you."

We are of opinion, from these instructions, that the jury got quite as clear an idea of the matter involved in the request contained in the second assignment of error as would have been imparted by a statement of the principle in the language there set out.

The third assignment of error must also be overruled. It is true the circuit judge did not give any instruction concerning circumstantial evidence, but, there was no request presented by plaintiff in error for an instruction upon that subject. In the absence of proper request upon the subject, the circuit judge could not be put in error for a failure to charge upon it.

The fourth assignment is overruled. We do not think that the affidavits referred to are sufficient, when taken in connection with the fact that the company knew that No. 118 had passed the building that day, and knew that very hour when it did pass. Taking all the circumstances together which should be considered in connection with the affidavits, we are of opinion that the company has not acquitted itself of negligence in respect of the absence of engineer Haley.

We shall pass the fifth assignment of error for the present.

The sixth assignment of error, we are of opinion, should be overruled. It was an immaterial allegation that the plaintiff below was in possession of the mill. Whether in possession or not, he could sue for an injury to his interest.

Now we come to the fifth assignment of error.

Before considering the legal question involved, it should be said that the testimony shows that the mill prior to the fire had been rented for the term of one year to Hubert Cherry, who was in possession of it.

The substance of the assignment is that, inasmuch as there had been a lease of the mill for one year, which had not expired, there were two interests in the property— one that of the lessee, the other the interest of the reversioner, the owner in fee of the property; that each had a right to sue for an injury to his interest, but that neither had a right to sue for an injury to the interest of the other, and that in a suit by the reversioner for an injury to his interest the circuit judge could not lawfully ignore the existence of the leasehold estate, and instruct the jury to allow to the reversioner damages for the injuries inflicted upon the whole interest in the property.

It is insisted in behalf of defendant in error, that when the property was destroyed by fire the leasehold estate ceased, and nothing was left but the reversion. To sustain this proposition the following authorities are cited: *Winton* v. *Cornish,* 5 Ohio, 477; *Stockwell* v. *Hunter,* 11 Metc. (Mass.), 448, 45 Am. Dec., 220; *Graves* v. *Berdan,* 26 N. Y., 498; *McMillan* v. *Solomon,* 42 Ala., 356, 94 Am. Dec., 654; *Ainsworth* v. *Ritt,* 38 Cal., 89; *Shawmut Nat. Bank* v. *Boston,* 118 Mass.; 125; *Alexan-*

*ander* v. *Dorsey,* 12 Ga., 12, 56 Am. Dec., 443; *Harring-ton* v. *Watson,* 11 Or., 143, 3 Pac., 173, 50 Am. Rep., 465; *Porter* v. *Tull,* 6 Wash., 408, 33 Pac., 965, 22 L. R. A., 613, 36 Am. St. Rep., 172; *Kerr* v. *Merchants' Exchange Co.,* 3 Edw. Ch., 316; *Chesebrough* v. *Pingree* (Mich.), 40 N. W., 747, 1 L. R. A., 529; *Wattles* v. *South Omaha Ice & Coal Co.,* 50 Neb., 251, 69 N.W., 785, 36 L. R. A., 424, 61 Am. St. Rep., 554; *Waite* v. *O'Neil,* 76 Fed., 408, 22 C. C. A., 248, 34 L. R. A., 550.

In all the foregoing authorities except the three last cited it appeared that the property rented was a room or apartment in a building or a cellar, or some part of the building as distinguished from the whole building. In this class of cases the authorities are practically uniform that the destruction of the building brings the interest of the lessee to an end. The reason given is that the lease of such a portion of a building does not carry with it any interest in the land. The whole subject is discussed luminously and with great learning in the case of *McMillan* v. *Solomon,* supra. No different doctrine is taught in volume 2, Taylor's Landlord & Tenant, section 520, referred to by counsel.

The current of authority is almost without exception that, where a building is rented without any language indicating that only the building itself is leased, as distinguished from the subjacent land, both the building and the land pass under the lease, and a destruction of the building will not end the lease, but that the lease will continue to the end of the term,

and· the lessee is liable for the rent up to the expiration of such term. *Banks* v. *White,* 1 Sneed, 613; *Hibbard* v. *Newman,* 2 Baxt., 285; *McNairy* v. *Hicks,* 3 Baxt., 378. And see *Hicks* v. *Parham,* 3 Hayw. 225, 9 Am. Dec., 745. The same doctrine is recognized in *Waite* v. *O'Neil,* supra, cited by defendants in error. In the case of *Wattles* v. *South Omaha Ice & Coal Company,* supra, cited by defendants in error, it is admitted that the foregoing is practically the universal doctrine under the common law, but that case declines to follow it. The note-to *McMillan* v. *Solomon,* supra, recognizes that such is almost the universal doctrine. Indeed, the current of authority is so strong that it is useless to cite authorities upon the subject. Of course; if the property itself is destroyed, as in the case of a landing (*Waite* v. *O'Neil,* supra), the tenancy would cease. The subject of the lease in that case was a landing on the Mississippi river. The landing was washed away by a change in the current of the river, and the court held that the tenancy thereupon ceased. In *Chesebrough* v. *Pingree,* supra, the question involved in the case was to some extent discussed, but the case went off upon another ground.

Assuming it to be settled, then, that in the present case the two interests referred to still existed, we pass to the next proposition—that the reversioner and the tenant each had a right of action for the injury to which he was subjected by the fire.

The recognized doctrine is that a tenant, in the ab-

sence of a covenant to the contrary, is liable to the land-lord for waste, by whomsoever committed. "If the law were not so," said Lord Mansfield in *Attersol* v. *Stevens,* 1Taunt., 202, "there would be no protection to a lessor where he lives at a distance from his estate. This is not the case of a sack full of earth stolen by night, but many hands and carts must be employed, and the tenant must necessarily know it. When the lessor comes to see his estate, and finds the soil gone, it is impossible that he should know who took it. Suppose, on a covenant not to take brick earth, the lessor sues, finding a quantity gone. Is it an answer to say: 'I did not take it; a stranger—a beggar—took it; resort to him?' The law authorizes the tenant to use force in order to resist the taking, and, if that force is resisted by force, the law will not presume that the law is so feeble as not instantly to repel it and prevail." In view of this principle, it seems to have been held in *Austin* v. *Hudson River R.* Co., 25 N. Y., 334, that the tenant could sue for the whole injury done to the premises, and that the recourse of the landlord would be upon him. The more reasonable view, however, seems to have been adopted in *Wood* v. *Griffin,* 46 N. H., 231, that, while the tenant could sue to recover damages for injury to his own interest, he could not recover for injury done to the reversioner, unless it should appear that he had paid the landlord or rever-sioner such damages. See, also, *California Dry Dock Company* v. *Armstrong* (C. C.), 17 Fed., 216.

The weight of authority seems to be that each may sue

to recover for the injury done to his estate in the prem-
ises, which may be the subject of the controversy.   In
*Sherman* v. *Fall River Iron Works Co.*, 2 Allen, 524, 79
Am. Dec., 799, it was held that a lessee might maintain
an action for a nuisance to the real estate which he oc-
cupied, which was injurious to his possessory interest;
while the landlord must bring an action for an injury to
the reversion.   In *Getz* v. *Philadelphia & Reading Ry.*,
105 Pa., 547, the supreme court of Pennsylvania held
that lessees of property from year to year were entitled
to recover damages to their leasehold interest when the
property was damaged or taken by a railroad company.
In *Crowell* v. *New Orleans, etc., Ry.*, 61 Miss., 631, it ap-
peared that the owner of realty gave the defendant rail-
way company a right of way across land in possession
of the tenant.   The tenant sued the railroad company
for trespassing.   The supreme court of Mississippi held
that, inasmuch as the owner of the land had leased it to
the tenant for a year, the latter was the owner of the
term, and it was thereafter not within the power of the
landlord to confer upon the railroad company the right
to contract its road on the land during the term; that
the landlord could confer no right which he himself
could not exercise over the premises; that he himself
would have been a trespasser if he had done the acts
complained of—that is, had built the roadbed of a rail-
road track across the land; and that the company, act-
ing under his authority only, was not protected by it
from a recovery by the tenant for the injury inflicted.

In Sutherland on Damages it is said: "The same act may be injurious to several persons having different interests—to the person having a limited estate in possession, and the person or persons having the fee subject to that possessory title. The owner of the reversionary or expectant estate has no claim for damages where a wrong affects only its present enjoyment, and when it affects the value of the whole estate in possession and in expectancy he has no claim for damage except for the injury to the inheritance." Vol. 4, section 1033 (3 Ed.).

In *Attersol* v. *Stevens*, supra, it was said, per Chambre, J. (page 194): "Where different persons have distinct rights in the subject of trespass, the compensation must be to each in proportion to the injury he has received. One of them cannot claim that part of the compensation which belongs to the other, nor can the satisfaction made to one be a bar to an action brought by another. It can hardly be necessary to cite cases upon this point." In our own case of *Colcough* v. *Railway*, it appeared that the defendant railway company had appropriated certain lands for its right of way, which were leased for a term of years to the plaintiff. The charter provided that, when property should be taken by the company for railroad purposes, the 'owner' should be compensated. The defendant insisted that only the owner of the fee could recover, but the court held that the lessee or the owner of any interest might recover for the loss of damage to his particular estate. Speaking to this matter, the court said: "It would seem in such

cases that persons vested with the several interests which constitute the entire estate might join in a proceeding under the statute to obtain compensation, or as they have several interests, proceed separately. In either mode or proceeding, however, compensation for the entire damage must be apportioned according to their respective interests." 2 Head, 171.

In *Jordan* v. *Benwood* the supreme court of West Virginia had a case under examination wherein it appeared there was a life estate and a remainder interest. The suit was brought by the remainderman for injury to the property. It did not appear that any deduction had been made in the damages for the amount of injury suffered by the holder of the life estate. The court announced the following doctrine, viz: That, if there be a tenant for years or life in actual possession, he can sue for any trespass affecting his immediate residential interest and the reversioner or remainderman, if the act does a permanent injury to the inheritance, may sue as to that, but that they are separate claims; that where the injury is of a permanent nature, deteriorating the market value of the property, so that, if the remainderman or reversioner were to sell, it would bring less money in the market, there is damage to the reversion or remainder, for which the reversioner or remainderman may sue; that where the same act affects both the limited estate and remaining fee, damages are apportionable between the tenant of the particular estate and the owner of the fee; that the particular tenant recovers for damage only to pres-

ent enjoyment covering the entire term, if it affects the entire term, and the remainderman or reversioner only for damage to the remainder or reversion. "This discrimination of right between the two is plain in the law books," continues the court, "and must be carried out in practice. How? Books do not just say, but they say, as reason says, that damage to the reversion or remainder is the amount that estate is diminished in value. . . . But that is only the market value of the remainder after the end of the particular estate, and it is difficult to get at that, unless we ask the market value of the property before and after the injury, regardless of the two estates, and then seek the value of the estate for years or for life on the basis of the annual rental value multiplied by the number of years remaining of the term of years, or by the number based on the expectation of life of the life tenant." 26 S. E., 266, 36 L. R. A., 519, 57 Am. St. Rep., 859.

Applying these principles, it is clear that the circuit judge committed error in instructing the jury that they should allow to the defendant in error the whole value of the mill and equipment, making no account of the value of the leasehold interest. This value should have been proven, and the jury should have been instructed by the court to deduct it from the total valuation of the mill.

For this error the judgment of the court below must be reversed, and the cause remanded for a new trial.