# Richmond

**Percy F. Knable, Individually and Trading as Kay Jewelry Company, Incorporated v. Dr. Alexander L. Martone, and Mid-Town Development Corporation.**

November 30, 1953.

Record No. 4105.

Present, Hudgins, C.J., and Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Ashburn, Agelasto & Sellers,* for the appellant.

*William L. Parker,* for the appellees.

Spratley, J., delivered the opinion of the court.

Percy F. Knable, individually and trading as Kay Jewelry Company, Incorporated, instituted this proceeding against Dr. Alexander L. Martone, Mid-Town Development Corporation, Virginia Engineering Company, Incorporated, and Sol Mednick, trading as Globe Iron Construction Company, seeking the determination of complainant's rights as lessee of a certain one-story building in the City of Norfolk, Virginia. He prayed for an award of damages, and for an injunction against defendants forbidding any trespass upon the leased building. From a decree dismissing his bill of complaint, he applied for and obtained this appeal only as to Dr. Martone and Mid-Town Development Corporation.

At the date of the lease in question, Dr. Martone owned a triangular parcel of land, on which he planned to build a shopping center. He employed Bernard Spigel, an architect, to draw up plans for the design and construction of the center. The "plot plan of Mid-Town Shopping Center," prepared by Spigel, and exhibited in evidence, was not a plat of a land subdivision, but an architect's plan which showed the building layout in twenty-three units. It was contemplated that, upon completion, the center would consist of a series of continuous stores or buildings, with each unit separated from the others only by partition walls. Units were to be erected as tenants were procured, with the construction conforming to the needs of tenants. The right was reserved to revise or modify the "plot plan" as conditions required. Knable selected "the building to be located and of the dimensions shown as No. 16," on the plan.

On June 20, 1946, Dr. Martone executed a lease to the complainant for ten years, "beginning on the first day of the calendar month next succeeding the calendar month in which the building to be erected by the lessor is completed and ready for occupancy by the lessee," the description of the leased property therein being as follows:

"The one story brick or masonry store building having a frontage of twenty-five (25) feet and depth of fifty (50) feet, which is to be constructed *as a part of the Midtown*

*Shopping Center,* located on Sewell's Point Road and Granby Street, in the City of Norfolk, Virginia near the intersection of said Road and said Street; the building to be located and of the dimensions shown as No. 16 on the plot plan of Midtown Shopping Center, Norfolk, Virginia made by Bernard S. Spigel, Architect, Norfolk Virginia, *to be revised.*

"To be used as a Jewelry Store and for such other items as are customarily carried in cash and credit Jewelry Stores and for no other purpose." (Italics added.)

The lease was prepared on the standard form used by the Norfolk Real Estate Board, and, in addition to the usual printed terms and conditions, contained a page of typewritten terms and conditions. Among a number of restrictive covenants as to the use of the building was the following express provision:

"The tenant agrees that he will not use, or permit to be used, the roof of the said premises, * * * ."

A one-story building of the dimensions shown was thereupon constructed at the prescribed location to meet Knable's requirements, and he entered into occupancy thereof on January 1, 1947.

On October 31, 1947, Dr. Martone conveyed the property described in the above lease to Mid-Town Development Corporation.

The question presented is whether the lessee is entitled, under the terms of the lease, to the possession of building No. 16, its roof, and the air space above the roof.

Unit 16 occupied a corner of a building which also housed Units 17 and 18. A common roof covered all three, with partition walls between the units. There were no openings in any of the surrounding walls, except the show windows and the door on the front of each unit. There was no skylight or opening of any kind in the roof. The back and side walls enclosing Unit 16 were of solid masonry.

In the month of June, 1950, Mid-Town Development Corporation entered into a contract with the Virginia Engineering Company, Inc., to construct a department store

building upon the land area adjoining Unit 16 on the west, designated on the architect's plan as "Future Building," embracing Units 14 and 15, with an extension of the structure over the area above Units 16, 17 and 18.

After work had been begun on said building, Knable complained to the lessor about its construction, and thereafter instituted this suit. The building was, however, completed and the lessee thereof put in possession before this case was heard in the lower court.

The record shows that in constructing the department store building, steel columns were installed on concrete foundations on the land on each side of Unit 16, and steel girders extending over Unit 16 then laid on the top of the columns. No part of the new structure touched any part of Unit 16. The front of Unit 16, the only source of light and air, and of ingress to and egress from the building, was not obstructed in any way. The new construction added no fire hazard, and the quiet possession of the lessee of Unit 16 was not interfered with in any respect.

With respect to the rights of tenants in roofs of buildings, the rule is stated in 32 Am. Jur., Landlord and Tenant, § 173, page 167 *et seq.*, as follows:

"In case of the lease of a part of a building, such as the ground-floor store or an upper floor, this would not itself carry any interest in the roof. The lessor in such a case retains full control of the roof and may use it for such purposes as he chooses so long as it does not endanger or interfere with the tenant's use of the part of the premises leased to him. This has been held true where the lease described the demised premises as the store and basement of a building which was only one story in height, having merely an air chamber between the ceiling of the store and the roof."

In 51 C. J. S., Landlord and Tenant, § 292, page 945, we find:

"*Roof.* In the absence of contrary provisions in the lease, it has ordinarily been held that the lease of an entire

building includes the roof, and the same principle has been applied where the lease covered a portion of a building entirely independent of other portions. On the other hand, where there is a common roof over premises occupied by a landlord and tenants, or by different tenants, ordinarily the part of the roof covering the portion leased to one tenant is not included in the lease, and may not, without special agreement, be sublet, but remains in the control of the landlord. In the absence of an agreement relating thereto, tenants sharing a common roof have no easement thereof except for purposes of shelter."

The only case cited to us closely in point is that of *Macnair* v. *Ames*, 29 R. I. 45, 68 A. 950, 16 Am. & Eng. Ann. Cas. 1208. In that case, there was no reservation with respect to the roof, as is true here. There the lessee of a store and basement sought to enjoin the erection of a bill-board upon the roof of the building by the defendant, who justified his action by a license from the lessor. The building in question was a one-story building, in which were located other stores, adjoining the premises demised to the complainant. After discussing the respective rights of landlord and tenant in such a case, the court said:

"It is to be observed that the lease does not purport to let the entire building, but only 'the store numbered 322 Weybosset street and the basement as per annexed drawing *in the front portion* of the building number 322, 324, and 326 Weybosset street.' And it is conceded that there are four other tenants in other parts of the building, one of them occupying the basement only. The lease also contains the following covenants, 'And the said lessee also covenants and agrees not to lease or underlet, nor permit any other person or persons to occupy, or improve, or make, or suffer to be made, any alteration in the premises hereby leased, without the written consent of said lessor having first been obtained, and that the said lessor may enter to view and make improvements in said premises as may be necessary or expedient. And the lessor agrees to keep the exterior of the premises in good repair.'

"The lessor unquestionably has the right to enter to make improvements as also the right of access to the roof to make repairs, and the lessee has agreed that he will not 'make, or suffer to be made, any alteration in the premises without the written consent of the lessor.' Doubtless it would have been competent for the parties to have contracted specifically that the complainant lessee should have control of the roof, but the lease is silent on that point, and we cannot say that the lessee of a part only of this business block is entitled to more than the lease describes—that is to say, the 'store and basement' in the building as distinct from the land on which it stands and as distinct also from the entire building. *McMillan* v. *Solomon*, 42 Ala. 356, 94 Am. Dec. 654."

In the opinion in the above case there is quoted the following statement from *O. J. Gude Co.* v. *Farley*, 28 Misc. (N. Y.) 184, 186, 58 N. Y. S. 1036:

" 'The building was of three stories; the first was used as a liquor store by McMenamey,' [the tenant] 'and the second and third floors sublet by him as tenements. The respondent asks the court to hold that there was nothing in McMenamey's lease to prevent him from subletting the roof which 'is a part of third story,' while the contention of the appellant is that the right of McMenamey to sublet was limited to the second and third floors and did not include the roof. The decision of the court is as follows: 'The purpose of the roof of a building is primarily to shelter it and all of its occupants, and the tenant of the top floor has no better title to the roof or better right to use it for any other purpose than shelter than has the tenant of any other floor, and his right to use the roof over him is like his right to use the supporting walls of the foundation, one that is necessary and essential to the safety and quiet enjoyment of his apartments under the roof in the usual manner and any extension of that right must be by agreement with or license from the owner. * * * * ' "

The language of the lease under review, as applied to the

circumstances of the case, is clear and definite. That which is plain needs no explanation or interpretation. The lease shows that it was limited to a single one-story building; that it was not meant to give the grantee any right to use the roof or the space above the roof; and that the landlord reserved the right to revise or modify the building plan of the shopping center, including the right to make an addition to building unit No. 16. The lessee got what was given to him in the lease and nothing more.

Broken down and analyzed, the granting clause shows a lease of the following described property:

(1) A "one story brick or masonry store building" (not a parcel of land); (2) "having a frontage of twenty-five (25) feet and depth of fifty (50) feet" (the dimensions of the building); (3) "which is to be constructed as a part of the Midtown Shopping Center" (a part of a larger building); (4) "the building to be located and of the dimensions shown as No. 16 on the plot plan of Midtown Shopping Center, Norfolk, Virginia, made by Bernard S. Spigel, Architect, Norfolk, Virginia, to be revised." (Showing the location of Unit 16 with relation to other units of the shopping center, and serving notice that the plot plan was subject to revision.)

In addition to the specific words of the granting clause, there was further an express agreement by the lessee that he would not use, or permit to be used, the roof of the building. This makes it very clear that lessee had no right to the use of the roof, or to the space above it. Lessee's possession was by the terms of the lease restricted to the space within the enclosures of building No. 16. That which was not granted remained in the owner of the reversion, the assignee of the lessor.

We find no error in the ruling of the trial court, and for the foregoing reasons we affirm the decree complained of.

*Affirmed.*