(61 Misc. Rep. 308.)

UNITED MERCHANTS' REALTY & IMPROVEMENT CO. v. NEW YORK
HIPPODROME.

(Supreme Court, Appellate Term. December 16, 1908.)

1. LICENSES (§ 44*)—DISTINCTION BETWEEN LICENSE AND LEASE.

By an agreement between defendant and the owner of a building, defendant hired all the roof of the building for two years, to be used as a bulletin board for displaying advertising matter, with the right of access to the roof during business hours to erect and maintain the bulletin and change the signs thereon. The owner reserved the right to enter upon the roof to make desired improvements or place lights thereon. *Held*, that the agreement was a lease, and not a license.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 98; Dec. Dig. § 44;* Landlord and Tenant, Cent. Dig. § 8.]

2. LANDLORD AND TENANT (§ 196*)—RENT—HOLDING OVER.

Where a tenant, hiring a roof for the purpose of maintaining a sign thereon, gave notice that it intended to remove from the premises at the end of the term, but did not remove its sign, its failure so to do constituted a holding over, and the mere fact of notice did not relieve it from further liability for rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 737; Dec. Dig. § 196.*]

Appeal from City Court of New York, Trial Term.

Action by the United Merchants' Realty & Improvement Company against the New York Hippodrome on an agreed statement of facts. Judgment of dismissal, and plaintiff appeals. Reversed and rendered.

Argued before GIEGERICH, HENDRICK, and FORD, JJ.

Stroock & Stroock (S. M. Stroock and Charles Levy, of counsel), for appellant.

William Klein (William Klein and Nathan G. Goldberger, of counsel), for respondent.

GIEGERICH, J. The action is for rent. The case was submitted to the court upon an agreed statement of facts. It was conceded that the parties entered into an agreement in writing, dated November 26, 1905, whereby the plaintiff, as party of the first part, let unto the defendant, as party of the second part, and the latter hired from the former, all of the roof on the premises known as No. 1313 Broadway, corner of Thirty-Fourth street, borough of Manhattan, city of New York, for a term of two years, commencing on the 1st day of December, 1905, and ending on the 1st day of December, 1907, at the yearly rent of $2,000 per year, payable monthly in advance, "said roof and space above it to be used solely for the purpose of erecting thereon a bulletin board for displaying advertising of a lawful nature, but no cigars, cigarettes, tobacco, or smoking articles to be advertised thereon." It further appeared that the defendant went into occupancy of the said demised premises, and occupied the same in accordance with the terms of the said agreement, and caused to be erected on said roof a large iron sign, which was controlled or maintained by it

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

during the term of said agreement; that prior to December 1, 1907, the defendant notified the plaintiff that it intended to remove from the premises and no longer occupy the same, but the said sign remained on the premises after the date last mentioned; that the plaintiff notified the defendant of its election to hold the defendant as its tenant for another year; and that rent for the months of December, 1907, and January and February, 1908, amounting to $499.90, was demanded by the defendant, and payment thereof was refused. The agreement in suit, among other things, also provides as follows:

"It is further understood and agreed between the parties hereto that said party of the second part shall have the right to equip said bulletin with the necessary equipment, consisting of wires and such other things as may be necessary or incidental to erecting said sign, provided the said party of the second part has in all instances first obtained any permission or consent necessary from any of the municipal departments and bureaus and the Board of Fire Underwriters, and upon condition that such wires or equipment shall not interfere with any tenants of the building.

"The party of the first part agrees that for the purpose of erecting and maintaining said sign, as well as for changing said sign or the equipment thereof from time to time, the party of the second part, or its duly authorized representatives, shall have access to said roof during business hours.

"The party of the second part shall at all times during the continuance of this lease keep the plumbing work, pipes, tin, slate, and glass of the roof completely in repair at its own expense, in so far as such repair is made necessary or desirable by said sign being put on said roof or maintained thereon, or by the use thereof by the party of the second part."

"The party of the first part reserves the right to enter upon said roof and make any improvements which it may desire, or place any lights thereon at any time, and the party of the second part shall at all times so maintain the signs and bulletin boards on said roof so as not to interfere with the access or light through any skylight which may be erected on said roof for the photographer's business, or with the draught to the furnace chimney."

From what has been said it will be seen that the sole question involved in the case is whether the agreement in controversy is a lease or a license. The learned trial justice held that the agreement was not a lease, expressing the opinion that Goldman v. New York Advertising Company, 29 Misc. Rep. 133, 60 N. Y. Supp. 275, cited by the defendant, was controlling, and that Pocher v. Hall, 50 Misc. Rep. 639, 98 N. Y. Supp. 754, upon which the plaintiff relied, did not apply.

The case at the bar, however, is distinguishable from the Goldman Case. There the agreement recites that the owner of the building "leases * * * the westerly wall of the house known as 204 East Ninety-Seventh street to be used for advertising purposes," and the Appellate Term, Mr. Justice Leventritt writing the opinion, in construing such agreement and the renewal thereof, at page 135 of 29 Misc. Rep., and page 276, 60 N. Y. Supp., said:

"The original, as well as the renewal, agreement merely gave it [the defendant] the authority, for a stated compensation, to do one particular act on the plaintiff's property and no other. It had the right or privilege to use the plaintiff's wall for advertising purposes for one year, and then its rights and priviledges ended. It could do nothing else to or with the wall. It could exercise no act of dominion over it. So far from having exclusive possession, it did not even have exclusive occupation of that part of the plaintiff's premises. It had the right of occupation only to the extent of displaying the advertisement of its patrons. Clearly the instrument was not a lease. Taylor, Landl. & Ten.

(8th Ed.) § 14; McAdam, Landl. & Ten. (2d Ed.) 48, 51; Lowell v. Strahan, 145 Mass. 1, 12, 12 N. E. 401, 1 Am. St. Rep. 422."

But in the present case the defendant had not only the right to erect on the roof a sign, with the necessary equipment, at his own expense, but, as above shown, its dominion over the roof was exclusive as against every one save only the owner, and his right to enter was expressly limited to the purposes stated. As already said, it was stipulated by the parties in the agreed statement of facts that the defendant entered upon the demised premises and occupied the same in accordance with the terms of the said agreement, and caused to be erected thereon a large iron sign, which was controlled or maintained by it during the term of said agreement.

The case of Pocher v. Hall, supra, clearly distinguishes the Goldman Case, as will be seen from the following excerpt from the opinion of Mr. Justice Bischoff, at page 640, 50 Misc. Rep., and page 754, 98 N. Y. Supp., who spoke for the court in that case, viz.:

"The plaintiff's recovery, upon the theory that the agreement between the parties was a lease, and not a mere license, is, in our opinion, to be upheld. This agreement gave to the defendants the use of the roof of the premises for advertising, a restricted purpose, but one which none the less involved the defendant's possession of and dominion over a substantial part of the realty. The transaction comprised the construction and maintenance of the defendant's own structure for signs, not the mere placing of signs upon a wall, as in the case of Goldman v. New York Advertising Company, 29 Misc. Rep. 133, 60 N. Y. Supp. 275, nor the simple right to affix advertising matter to a structure already erected upon a roof, as in Reynolds v. Van Beuren, 155 N. Y. 123, 49 N. E. 763, 42 L. R. A. 129; and the ground of distinction is noted in O. J. Gude Company v. Farley, 28 Misc. Rep. 184, 58 N. Y. Supp. 1036, where the opinion was expressed by this court that an identical agreement was to be construed, under these circumstances, not as a license, but as a lease. The defendants having remained in possession, the lease endured for the period covered by the demand in suit."

The principles of the foregoing decision are peculiarly applicable to the present case, and are controlling.

The learned trial justice bases his conclusion that the agreement in question is a license, rather than a lease, upon the ground that it is "a privilege for a limited use of a part of the premises for a specific purpose, with the right of access thereto during business hours." In support of the grounds just mentioned the defendant contends that it had no control over, use of, nor dominion over the roof, or over a substantial part of the realty, with the exception of the right to use the bulletin board or the sign for supplying advertising of a lawful nature, with permission only to enter upon the premises during business hours, and only for the purpose of making alterations or equipping the sign, while the plaintiff reserved to itself the right to enter upon said roof and make any improvements which it might desire or place skylights thereon at any time. The precise point so presented was decided adversely to the defendant's contention in the Pocher Case, where, as above noted, it was held that the mere fact that the roof was to be used for a restricted purpose did not render the agreement any the less a lease.

The learned trial justice, among other things, found that prior to December 1, 1907, the defendant notified the plaintiff that it intended

to remove from the said premises and no longer occupy the same after November 30, 1907, but that the sign remained on the premises after December 1, 1907. The mere fact that the defendant so notified the plaintiff did not relieve it from further liability for the stipulated rent, since its failure to remove the sign from the roof after the expiration of the term provided by the agreement in question constituted a holding over. McAdam on Landlord & Tenant (3d Ed.) p. 90; Manheim v. Seitz, 21 App. Div. 16, 47 N. Y. Supp. 282; Vosburgh v. Corn, 23 App. Div. 147, 48 N. Y. Supp. 598; Schwarzler v. McClenahan, 38 App. Div. 525, 56 N. Y. Supp. 611. Judge McAdam, in his work on Landlord and Tenant (3d Ed.) p. 90, states:

"The tenant's duty is to quit and surrender possession of the premises at the expiration of the term, and in addition to leaving the premises himself he must also remove his property. The act, therefore, of permitting all the tenant's property to remain upon the premises after the expiration of the term, in the same condition as before its expiration, constitutes a holding over by the tenant."

In Vosburgh v. Corn, supra, the court, through Mr. Justice Hatch, at page 148 of 23 App. Div., and page 599 of 48 N. Y. Supp., said:

"The only question, therefore, which requires consideration, relates to the surrender of the premises. It is without dispute that, after the term had expired, the property of the association continued to remain upon the demised premises. The court ruled as matter of law that such occupation constituted a holding over. In this respect we think that the ruling was correct. The evidence established that all of the property of the association was permitted to remain upon the leased premises in the same condition as before the expiration of the term, and the conclusion, therefore, was that the occupation remained the same as before. This constituted a holding over within the clear meaning of the law."

Entertaining the views hereinbefore expressed, my conclusion is that the justice erred in rendering judgment in favor of the defendant, instead of the plaintiff.

The judgment should therefore be reversed, and, under the stipulated facts, judgment should be rendered for the plaintiff for the sum of $499.98, with interest and costs. All concur.